fIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEWART ABRAMSON,<br>individually and on behalf of a class<br>of all persons and entities similarly<br>situated, | : <br> : <br> : <br> : | Case No. 1:26-cv-00155-JKM |
| Plaintiff(s), | : <br> : | |
| v. | : <br> : | |
| LINE 5, LLC, | : <br> : | |
| Defendant(s). | : | |

## DEFENDANT LINE 5, LLC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant Line 5, LLC ("Line 5") respectfully submits this brief in support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint Pursuant to FED. R. CIV. P. 12(b)(6).

1

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................i

TABLE OF AUTHORITIES ..........................................................................ii

I.    Procedural History of the Case .......................................................1

II.   Statement of Facts ...........................................................................2

III.  Statement of Questions Involved....................................................4

IV.   Legal Standard ................................................................................5

V.    Argument.........................................................................................6

    A.    Plaintiff's Claims Under 47 U.S.C. § 227(b) Fail Because Plaintiff Expressly Consented in Writing to Receive Telephone Calls from Line 5.................................................................6

    B.    Plaintiff Fails to Plausibly Allege that He Effectively Revoked His Prior Express Written Consent.........................................................8

    C.    Plaintiff's Claims Under 47 U.S.C. § 227(c) Fail ............................11

        1.    Section 227(c) Does Not Provide a Private Right Action for Text Messages.........................................................................11

        2.    Plaintiff's Allegations Establish an Existing Business Relationship .................................................................15

        3.    The Telephone Calls and Text Messages from Line 5 to Plaintiff were not "Telephone Solicitations." ........................17

    D.    The Amended Complaint Fails to Distinguish Between Plaintiff's Separate TCPA Claims and Does Not Plausibly Plead the Elements of Either ....................................................19

VI.   Conclusion ......................................................................................21

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................5, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ....................................................5, 20

*Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780 (N.D. Ill. 2016) ...........................................13

*Bostock v. Clayton Cty., Georgia*, 590 U.S. 644 (2020)...............................................14

*Cole v. C/T Install Am., LLC*, No. 25-3531,
        2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026)..............................12

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003) ........................10

*Daubert v. NRA Group, LLC*, 861 F.3d 382 (3d Cir. 2017)......................................7, 8

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013).......................................9

*Jackson v. Direct Bldg. Supplies, LLC*, No. 4:23-cv-01569,
        2024 U.S. Dist. LEXIS 8811, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024).....11

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) .........................................................5

*Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014) ................7

*Markowitz v. Ne. Land Co.*, 906 F.2d 100 (3d Cir. 1990)...........................................5

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010)......................................................5

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) ........................................................6

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) ...13, 14

*Medley v. Dish Network, LLC*, 958 F.3d 1063 (11th Cir. 2020) ...........................9, 10

*Newell v. Child.'s Dental Health Assocs., LLC*, No. 25-5238,
 2026 U.S. Dist. LEXIS 74360, 2026 WL 927378 (E.D. Pa. Apr. 6, 2026) ....12

*Ordonez v. Yost*, 289 Fed. Appx. 553 (3d Cir. 2008) ................................................5

*Pero v. Brown-Daub Chevrolet of Nazareth*, No. 25-7016,
 2026 U.S. Dist. LEXIS 134498, 2026 WL 1747214 (E.D. Pa. June 17, 2026)11

*Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615 (3d Cir. 2020) ..............7

*Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51 (2d Cir. 2017)................................9, 10

*Rubin v. Staples, Inc.*, No. 2:25-45515, 2026 U.S. Dist. LEXIS 70359,
 2026 WL 881651 (D.N.J. Mar. 31, 2026) ......................................................12

*Sardo v. McGrath*, 196 F.2d 20 (D.C. Cir. 1952) ......................................................6

*Steidinger v. Blackstone Medical Services*, No. 25-2398,
 ____ F.4th ____ (7th Cir. 2026) ......................................................12, 13, 14

*Sunshine State Reg'l Ctr., Inc. v. Dire., U.S. Citizenship & Immgr. Servs.*,
 143 F.4th 1131 (11th Cir. 2025) ....................................................................14

*Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993) ............6

**Statutes**

47 U.S.C. § 277(e) ..................................................................................................14

47 U.S.C. § 227(a)(4)...............................................................................................17

47 U.S.C. § 227(a)(4)(B) ..........................................................................................17

47 U.S.C. § 227(b) .................................................................................4, 6, 19, 20

47 U.S.C. § 227(b)(1)(A)(iii) .................................................................................6, 7

47 U.S.C. § 227(b)(1)(B) .......................................................................................6, 7

47 U.S.C. § 227(c)............................................................................................passim

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227........................1

**Rules**

FED. R. CIV. P. 12(b)(6)...........................................................................................2, 5

FED. R. CIV. P. 15(a)(2)...............................................................................................2

L.R. 15.1.......................................................................................................................2

**Treatises**

RESTATEMENT (SECOND) of TORTS § 892A(5) (AM. LAW INST. 1979)...................10

**Regulations**

47 C.F.R 64.1200(f)(5) ........................................................................................15, 16

## I.    Procedural History of the Case

Plaintiff filed a Class Action Complaint against Line 5, LLC, Headstart Warranty Group LLC ("Headstart"), and MLB Global, LLC d/b/a Benchmark Warranty in the United States District Court for the Western District of Pennsylvania alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  ECF 1.  Both Line 5 and Headstart answered the Class Action Complaint.  ECF 7, 15, respectively.  Plaintiff dismissed MLB Global, LLC without prejudice on May 16, 2025. ECF 16.

On July 3, 2025, following the initial conference with the Court, Headstart filed a Motion to Dismiss Plaintiff's Class Action Complaint or, alternatively, Transfer the Case based on the first-filed rule.  ECF 24, 25.   Line 5 joined in Headstart's motion.  ECF 27.  After the motion was fully briefed, United States Magistrate Judge Patricia L. Dodge issued a report and recommendation that Headstart's motion be granted and the case transferred to this Court.  ECF 32.  On January 22, 2026, the Honorable Judge Robert J. Colville adopted the magistrate's report and recommendation and transferred the case to this Court.  ECF 33.

After transfer, the parties submitted a Joint Status Report to this Court stating their intention to have Plaintiff's claims related to telemarketing calls made by Headstart consolidated into *Friel v. Headstart Warranty Group, et al.*, No. 24-cv-

1866, also pending before this Court.  ECF 37.  The Court then issued a joint order for both the *Friel* case and this case directing Plaintiff to, among other things, file a motion to amend his complaint or an amended complaint with the consent of all parties pursuant to FED. R. CIV. P. 15(a)(2) and L.R. 15.1.  ECF 39.  Plaintiff filed his motion to amend his complaint that same day, ECF 38, and this Court granted said motion on June 25, 2026. ECF 41.  Plaintiff's First Amended Class Action Complaint was filed immediately thereafter.  ECF 42.

Line 5 filed an unopposed Motion to Extend Time to Respond to Plaintiff's First Amended Class Action Complaint, ECF 43, which was granted on July 6, 2026. ECF 44.  Line 5 now files this Motion to Dismiss Plaintiff's First Amended Class Action Complaint pursuant to FED. R. CIV. P. 12(b)(6).

## II.    Statement of Facts

Line 5 uses Plaintiff's First Amended Class Action Complaint as the basis for the facts only for the purposes of this Motion to Dismiss and, otherwise, admits no wrongdoing.

Plaintiff alleges "[o]n or about October 16, 2024" he "agreed to an extended vehicle service warranty with a third party and the warranty was financed by Line5 with whom Plaintiff signed a security agreement."  ECF 42, ¶ 18.  *See also* Loan Package and Security Agreement which is attached hereto, incorporated herein, and

marked Exhibit A (hereinafter referred to as "Security Agreement"). The Security Agreement was signed by Plaintiff on October 16, 2024. *See* Ex. A. Included in the Security Agreement is the following language:

> By providing us your wireless (cell) telephone number, you expressly consent to receiving telephone calls from us concerning your Contract, including calls to collect what you owe. Live calls may be made by one of our employees. Calls may also be made by a prerecorded, autodialed voice or text message as applicable law allows. Your consent covers all types of calls.

*See* Ex. A. The Security Agreement also included a Credit Application which Plaintiff signed, and which stated, *inter alia*,

> (b) you expressly consent to us using prerecorded/artificial voice messages, text messages and/or automatic dialing equipment while servicing or collecting your account, as the law allows; (c) you agree that we may take these action using the telephone number(s) that you provide us in this credit application . . . .

*See* Ex. A.

Following October 16, 2024 (the date Plaintiff signed the Security Agreement and consented to receiving telephone calls and text messages from Line 5), Line 5 contacted Plaintiff both via telephone calls and text messages. ECF 42, ¶¶ 19, 24, and 26. Plaintiff alleges that he responded "STOP" to one of the text messages evidencing his alleged request for Line 5 to cease communicating with him. ECF 42,

3

¶ 21. The text messages stated that Plaintiff could "Reply STOP to unsubscribe." ECF 42, ¶ 19. Plaintiff claims that after he sent the "STOP" message, Line 5 continued to call him on the telephone and text him. ECF 42, ¶¶ 21, 24. Plaintiff also alleges that, on October 24, 2024, he mailed a letter to Line 5 requesting that all communications with him cease. ECF 42, ¶ 23. *See also* Plaintiff's October 24, 2024, letter, a true and correct copy of which is attached hereto, incorporated herein, and marked Exhibit B (hereinafter referred to as "Oct. 24th Letter"). Upon receiving the Oct. 24th Letter, Line 5 ceased communicating with Plaintiff on October 30, 2026, and Plaintiff's Amended Complaint does not allege any further communications after that date.

## III. Statement of Questions Involved

A. Does Plaintiff's 47 U.S.C. § 227(b) claim fail because he provided his express consent to receive communications from Line 5?

B. Did Plaintiff fail to plausibly allege that he effectively revoked his prior express consent?

C. Does Plaintiff's 47 U.S.C. § 227(c) claim fail because there is no private right of action under that subsection for text messages?

D. Do Plaintiff's allegations establish an existing business relationship between him and Line 5?

E. Do Plaintiff's own allegations demonstrate that the challenged communications were not "telephone solicitations"?

4

F.      Does the Amended Complaint fail to distinguish between Plaintiff's separate TCPA claims?

## IV.    Legal Standard

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the complaint. *See Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). In evaluating a motion to dismiss, the Court must "accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom." *Ordonez v. Yost*, 289 Fed. Appx. 553, 554 (3d Cir. 2008), *quoting Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

The applicable legal standard is one of plausibility: "a complaint must state a claim that is plausible on its face" and incorporates "sufficient factual matter" to support each claim pled. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). Satisfying this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 687. "[A] court is not required to accept legal conclusions alleged in the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229-230 (3d Cir. 2010).

Additionally, the Court may consider materials outside the pleadings which are not depositions, admissions on file or affidavits as defined by FED. R. CIV. P. 56 without converting a motion to dismiss into a summary judgment motion. *See Sardo*

5

*v. McGrath*, 196 F.2d 20 (D.C. Cir. 1952).  Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to the claim.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993).

## V.   Argument

### A.   Plaintiff's Claims Under 47 U.S.C. § 227(b) Fail Because Plaintiff Expressly Consented in Writing to Receive Telephone Calls from Line 5.

First, Plaintiff's Amended Complaint fails to clearly indicate which subsection of 47 U.S.C. § 227(b) he alleges was violated and his factual allegations do not help either.  On the one hand, he alleges that his "telephone number is used for personal *residential* purposes,"  ECF 42, ¶ 15, which implies a violation under 47 U.S.C. § 227(b)(1)(B) ("prohibiting calls to any *residential* telephone line using an artificial or prerecorded voice. . ."").  On the other hand, Plaintiff seeks to represent the "Robocall Class" which includes "cellular telephones", ECF 42, ¶¶ 31, 48, and implies a violation under 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting the use of artificial or prerecorded voice to "to any telephone number assigned to a. . .cellular telephone service. . ."").  Regardless of the Plaintiff's intentions, his § 227(b) claims fail because Plaintiff provided his "prior express consent" for the telephone calls.

6

Section 227(b)(1)(A)(iii) reads, in pertinent part:

> It shall be unlawful for any person within the United States. . .to make any call (other than a call . . . made with the ***prior express consent of the called party***). . . using . . . an artificial or prerecorded voice—. . . to any telephone number assigned to a . . . cellular telephone service. . .

(Emphasis added).  Similarly, Section 227(b)(1)(B) reads, in pertinent part:

> It shall be unlawful for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the ***prior express of the called party***. . .

(Emphasis added).

> The 'appropriate analysis turns on whether the called party granted permission or authorization' to be called, 'not on whether the creditor received the [cell] number directly.

*Daubert v. NRA Group, LLC*, 861 F.3d 382, 390 (3d Cir. 2017), *quoting Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1123 (11th Cir. 2014).

> Prior express consent can be deduced from a message-recipient's *voluntary provision* or 'knowing[] release' of his or her number to a message-sender, such that a message is solicited and thus not prohibited by the TCPA if the message relates to the reason the number was provided.

*Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615 (3d Cir. 2020), *quoting Daubert*, 861 F.3d at 386 (emphasis in original).

7

As discussed above, the Security Agreement contains two separate consent provisions both of which were agreed to and signed by Plaintiff.  This is not a situation where Plaintiff simply provided his phone number; rather he signed two documents (Security Agreement and Credit Application) which each contained consent provisions allowing Line 5 to call him using an artificial or prerecorded voice and send him text messages.  *Compare Daubert, supra.* (Consumer who merely provided cell phone number on hospital intake paperwork failed to provide "prior express consent" to be called by automatic telephone dialing system.)

Plaintiff's Amended Complaint alleges that he voluntarily signed the Security Agreement which included provided his specific consent to receive prerecorded and artificial voice calls to his telephone number.  ECF 42, ¶ 18.  Unlike cases where a person may voluntarily provide a telephone number to a company, Plaintiff's consent is memorialized in a written agreement with his signature.  *See* Ex. A.  Since the TCPA expressly exempts calls made with the "prior express consent of the called party," Plaintiff's own allegations, together with the Security Agreement and Credit Application he signed, establish that Line 5's telephone calls to Plaintiff were made with his own prior express consent.  Therefore, Plaintiff's claim under § 227(b) must be dismissed, with prejudice.

**B.    Plaintiff Fails to Plausibly Allege that He Effectively Revoked His Prior Express Written Consent.**

Plaintiff's allegation that he later transmitted the word "STOP" in response to a text message from Line 5 does not plausibly establish an effective revocation of the consent he provided in the signed, written Security Agreement. Although the Third Circuit has recognized that gratuitous consent may be ordinarily revoked, it has not held that a contracting party may unilaterally withdraw consent that forms an express term of a binding bilateral agreement. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270-72 (3d Cir. 2013). The Circuit Courts of Appeals that have addressed this issue held that "the TCPA does not permit a consumer to revoke their consent to be called when that consent forms part of a bargained-for exchange." *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 53 (2d Cir. 2017). *See also Medley v. Dish Network, LLC*, 958 F.3d 1063 (11th Cir. 2020) (Holding that the TCPA does not allow unilateral revocation of consent given in a bargained-for contract). The *Reyes* court specifically distinguished the facts presented in that case with the facts from *Gager*. In *Gager*, the consumer provided their telephone number gratuitously as part of an application, whereas in *Reyes* the consumer provided their telephone number "as bargained-for consideration in a bilateral contract." *Reyes*, 861 F.3d at 56. That is Plaintiff's situation—he provided his consent as part of the Security Agreement, a bilateral contract with Line 5 under which he was bound.

9

The *Reyes* court further distinguished *Gager* because it found that "'[c]onsent' . . . is not always revocable under the common law." *Id.* . Relying on a 2015 FCC ruling, there is a difference between "knowing" release of a phone number and consent provided "in exchange for any consideration" that is "incorporated into a binding legal agreement." *Id.*, at 57. When consent is provided as part of a bilateral contract,

> "consent," as that term is used in the TCPA, is not revocable. The common law is clear that consent to another's actions can "become irrevocable" when it is provided in a legally binding agreement. . .

*Id.*, *quoting* RESTATEMENT (SECOND) of TORTS § 892A(5) (AM. LAW INST. 1979). And this reading makes sense in terms of a contract such as Plaintiff's Security Agreement because there is a

> requirement that every provision of a contract—including any proposed modification—receive the 'mutual assent' of every contracting party in order to have legal effect.

*Id.*, at 57, *citing Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003). *See also Medley*, 958 F.3d at 1069-70 (cleaned up) ("We have expressly stated that an 'agreement' is a manifestation of mutual assent on the part of two or more person, and thus it is black-letter contract law that one party to an agreement cannot,

10

without the other party's consent, unilaterally modify the agreement once it has been executed.").

Once Plaintiff canceled the contract in his Oct. 24th Letter to Line 5 (which arguably took several days because of the mail), his revocation became effective and he received no further communications from Line 5 after October 30, 2024. However, up until Plaintiff canceled the contract, any attempts to revoke his consent were invalid and, as a result, Plaintiff's claims under § 227(b) fail.

## B.   Plaintiff's Claims Under 47 U.S.C. § 227(c) Fail

### 1.   *Section 227(c) Does Not Provide a Private Right Action for Text Messages.*

This is a question of first impression for this court and there is no circuit-wide authority regarding whether § 227(c) provides a private right action based on text messages.[1]   The only Circuit Court of Appeals to address the matter held that §

---

[1] In *Jackson v. Direct Bldg. Supplies, LLC*, No. 4:23-cv-01569, 2024 U.S. Dist. LEXIS 8811, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024), the Honorable Judge Brann of this Court held that § 227(c) can apply to *calls* made to cell phones, not just residential numbers, but was not presented with the question of whether § 227(c) applied to text messages.   A true and correct copy of this case is attached hereto and marked Exhibit C.

Both the District Court of New Jersey and Eastern District of Pennsylvania have held that text messages are "calls" for the purpose of § 227(c).   *See Pero v. Brown-Daub Chevrolet of Nazareth*, No. 25-7016, 2026 U.S. Dist. LEXIS 134498, 2026 WL 1747214 (E.D. Pa. June 17, 2026); *Newell v. Child.'s Dental Health Assocs.,*

227(c)(5) does not provide a private right of action because that section states that only "[a] person who has received more than one ***telephone call*** . . ." may bring a lawsuit. (Emphasis added.).  *See Steidinger v. Blackstone Medical Services*, No. 25-2398, \_\_\_ F.4th \_\_\_ (7th Cir. 2026) (A true and correct copy of this opinion is attached hereto and marked Exhibit E.).  The Seventh Circuit Court of Appeals undertook a strong and clear look at the statutory text of the TCPA when coming to this conclusion.

> Based on the ordinary public meaning of telephone call at the time of the TCPA's enactment, as well as the context provided by surrounding provisions of § 227, we find that texts are not calls, so § 227c)(5) does not authorize the plaintiffs' suit.

*Steidinger*, No. 25-2398, pg. 3.

> It's undisputed that 'telephone call' couldn't have been thought to cover text messages when the TCPA was enacted in 1991, because the first text message was not sent until the following year.

---

*LLC*, No. 25-5238, 2026 U.S. Dist. LEXIS 74360, 2026 WL 927378 (E.D. Pa. Apr. 6, 2026); *Rubin v. Staples, Inc.*, No. 2:25-45515, 2026 U.S. Dist. LEXIS 70359, 2026 WL 881651 (D.N.J. Mar. 31, 2026); *Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026).  A true and correct copy of all cases are attached hereto and collectively marked Exhibit D.

12

*Steidinger*, No. 25-2398, pgs. 3-4, *citing Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016).

> The provisions surrounding § 227(c)(5) provide further evidence that it doesn't create a private right of action for text messages. Sections 227(c)(1) and (c)(2) direct the Federal Communications Commission to engage in rulemaking 'to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object.' 47 U.S.C. § 227(c)(1) (emphasis added). And § 227(c)(3) and (c)(4) discuss the creation of a national database of individuals 'who object to receiving *telephone solicitations*,' i.e., the creation of the National Do-Not-Call Registry.

*Steidinger*, No. 25-2398, Pg. 5. The Court found that § 277(c)(5) provided a "narrower remedy" than § 227(b) because

> the National Do-Not-Call Registry was implemented pursuant to § 227(c)(3), which refers to 'telephone solicitations,' so the FCC's interpretation doesn't inform our understanding of § 227(c)(5), which refers only to telephone calls.

*Steidinger*, No. 25-2398, pgs. 9-10.

In reviewing the FCC's regulations on the question, the court was not bound by the FCC's interpretation as a result of the Supreme Court's decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025).

> Rather, we "interpret the statute as courts traditionally do under ordinary principles of statutory interpretation,

13

affording appropriate respect to the agency's interpretation."

*Steidinger*, No. 25-2398, Pg. 9-10, *quoting McLaughlin*, 606 U.S. at 168.

Now that *McLaughlin* has removed mandatory deference to the FCC's regulations, this court should interpret the TCPA "in accordance with the ordinary public meaning of its terms at the time of its enactment," *Bostock v. Clayton Cty., Georgia*, 590 U.S. 644, 654 (2020). The *Steidinger* court engaged in that type of statutory analysis and found that the use of "telephone solicitation" with the creation of the National Do-Not-Call Registry meant something different than the broader term "telephone call." Reading the text of the TCPA based on basic principles of statutory interpretation, if Congress uses different language within the same statute (as this case illustrates), courts should presume that the distinct words have different meanings. *See Sunshine State Reg'l Ctr., Inc. v. Dire., U.S. Citizenship & Immgr. Servs.*, 143 F.4th 1131, 1344 (11th Cir. 2025).

Furthermore, Congress has the ability to amend the statute, which it did in 2010 to include § 277(e). Section 227(e) defines the terms "text message," "text messaging," and "text message service" but Congress deliberately chose to not amend or revise the language § 227(c) regarding "telephone call" or "telephone solicitation." Thus, this court can reasonably infer that Congress made a deliberate decision *not* to include text messages as part of the conduct prohibited by § 277(c)

14

when it revised the TCPA to include § 227(e).  Based on the foregoing, Plaintiff's

claim under § 227(c)(5) fails and should be dismissed.

> 2.    *Plaintiff's Allegations Establish an Existing Business Relationship.*

Even if this court finds that text messages are covered under § 227(c)(5), that

section does not apply to the text messages and telephone calls at issue in this case

because there was an "established business relationship" between Plaintiff and Line

5.  Pursuant to its rulemaking authority under the TCPA, the FCC promulgated 47

C.F.R. 64.1200(f)(5) which states that, "for purposes of telephone solicitations" an

"establish business relationship"

> means a prior or existing relationship formed by a
> voluntary two-way communication between a person or
> entity and a residential subscriber with or without an
> exchange of consideration, on the basis of the subscriber's
> purchase or transaction with the entity within the eighteen
> (18) months immediately preceding the date of the
> telephone call or on the basis of the subscriber's inquiry or
> application regarding products or services offered by the
> entity within the three months immediately preceding the
> date of the call, which relationship has not been previously
> terminated by either party.

Plaintiff's own Amended Complaint establishes the existence of such a

relationship.  Plaintiff alleges that he purchased a vehicle service contract that was

financed through Line 5; he executed a Security Agreement and Credit Application,

and thereafter had an account with Line 5.  ECF 42, generally.  The Amended

15

Complaint likewise confirms that all of the communications from Line 5 came within two weeks after Plaintiff signed the Security Agreement and Credit Application. The Security Agreement expressly contemplates ongoing communications regarding Plaintiff's account, including servicing and collection communications, and identifies Line 5 as the assignee and creditor. Ex. A, generally. Even if the Plaintiff did not execute the Security Agreement, his signature on the Credit Application evidences an "inquiry or application regarding products or services offered by" Line 5 "within the three months immediately preceding the date of the call. . ." 47 C.F.R 64.1200(f)(5).

The Amended Complaint establishes an existing commercial relationship arising directly from Plaintiff's voluntary purchase and financing transaction with Line 5. At the time of the challenged communications, Plaintiff had not cancelled the contract and remained an account holder obligated under the Security Agreement. Accordingly, Plaintiff cannot plausibly allege that communications related to that continuing relationship constituted "telephone solicitations" within the meaning of § 227(c).

Moreover, nothing in Plaintiff's Amended Complaint plausibly alleges that either Plaintiff or Line 5 had terminated the existing business relationship before Plaintiff cancelled the agreement in late October 2024. To the contrary, Plaintiff

16

alleges that he continued to receive communications concerning his financed account, confirming the continuing and ongoing nature of the relationship. Once Line 5 received Plaintiff's termination of the agreement, Plaintiff receives no further communications, and the Amended Complaint alleges none (because he cannot make such an allegation since none were sent).

Since Plaintiff's own allegations establish the existence of an established business relationship, the communications at issue are exempt from the definition of telephone solicitation, 47 U.S.C. § 227(a)(4)(B). As a result, his claim that Line 5 violated § 227(c)(5) fails as a matter of law.

> 3. *The Telephone Calls and Text Messages from Line 5 to Plaintiff were not "Telephone Solicitations."*

Plaintiff's § 227(c)(5) claim also fails because the communications alleged in his Amended Complaint were not "telephone solicitations" as that term is defined by the TPCA. The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. . ." 47 U.S.C. § 227(a)(4). The relevant inquiry about the challenged communication thus becomes whether the purpose was to encourage Plaintiff to purchase, rent, or invest, in property, goods, or services. Conversely, communications whose purpose is to administer, service, or collect an existing account do not constitute telephone solicitations because they

17

are not encouraging the purchase, rental, or investment in property, goods, or services.

Here, Plaintiff's own allegations establish that the challenged communications arose solely from Plaintiff's agreement "to an extended vehicle service warranty with a third party. . ."  ECF 42, ¶ 18.  Plaintiff acknowledges receiving telemarketing calls related to an extended vehicle service warranty, but does not allege that Line 5 made such calls (nor could he). ECF 42, ¶ 17.  Rather, he alleges that he "received various emails and text messages from Line 5 around October of 2024 *after* agreeing to the warranty and security agreement."  ECF 42, ¶ 19.  The language of the text message further informs the purpose of the communication:  "This is Line 5 – Congratulations! Click here to add your payment method to your new Line 5 Account. . ."  ECF 42, ¶ 19.  In other words, Plaintiff's own allegations illustrate that the communications he received from Line 5 were related exclusively to his existing contractual relationship with Line 5.  These types of communications are fundamentally different from the type of telemarketing communications Congress sought to regulate through the National Do Not Call provisions contained in § 227(c).

The fact that all communications ceased with Plaintiff after Line 5 received Plaintiff's cancellation letter further confirm that the communications only related

18

to Plaintiff's then-existing business transaction—notably, not any efforts by Line 5 to encourage Plaintiff to purchase additional goods or services. Since Plaintiff fails to plausibly allege that the challenged communications were made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," his claim under § 227(c) fails and must be dismissed.

**D.  The Amended Complaint Fails to Distinguish Between Plaintiff's Separate TCPA Claims and Does Not Plausibly Plead the Elements of Either.**

The Amended Complaint should also be dismissed because it repeatedly conflates two distinct causes of action under the TCPA and fails to plausibly allege the elements of either claim. Although Plaintiff asserts separate claims under 47 U.S.C. §§ 227(b) and 227(c), the factual allegations do not distinguish which communications allegedly violated which statutory provision. Instead, Plaintiff repeatedly refers collectively to unspecified "telephone calls and text messages" without identifying which communications were allegedly made using an artificial or prerecorded voice or an automatic telephone dialing system, as required under § 227(b), and which communications allegedly constituted "telephone solicitations" within the meaning of § 227(c).

This distinction matters because §§ 227(b) and 227(c) prohibit materially different conduct and require proof of different statutory elements. Section 227(b)

19

regulates certain calls and text messages made using specified technologies without the recipient's prior express consent. By contrast, § 227(c) regulates telephone solicitations, including calls made to numbers listed on the National Do Not Call Registry or in violation of a seller's internal do-not-call procedures. Liability under one subsection does not establish liability under the other.

Despite these distinct statutory requirements, Plaintiff does not identify which specific communications allegedly violated § 227(b), which allegedly violated § 227(c), or how any particular communication satisfies the elements of either claim. Instead, Plaintiff relies upon generalized allegations referring collectively to all communications while asking the Court to infer violations of multiple independent statutory provisions.

Such conclusory allegations fall short of Rule 8's pleading requirements. To survive a motion to dismiss, a complaint must allege sufficient factual matter to permit the Court to draw a reasonable inference that the defendant is liable under each asserted cause of action. A plaintiff cannot satisfy that burden by grouping together distinct communications governed by different statutory provisions and different legal standards while omitting facts showing how each communication independently violated the applicable subsection of the TCPA. The deficiencies are particularly apparent here and such pleading is insufficient under *Twombly, supra*, ,

20

and *Iqbal, supra*, .  Accordingly, the Amended Complaint fails to plausibly plead either statutory claim and should be dismissed.

## VI.    Conclusion

Based on the foregoing, Defendant Line 5, LLC respectfully requests that this Honorable Court grant its Motion and dismiss Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted,

**BARRON & NEWBURGER, P.C.**

By:    /s/ Brit J. Suttell
BRIT J. SUTTELL, ESQUIRE
PA Id. No. 204140
1455 NW Leary Way, Suite 400
Seattle, WA  98107
(484) 999-4232
britjsuttell@bn-lawyers.com
Counsel for Defendant

Dated:  July 23, 2026

21

## CERTIFICATE PURSUANT TO LR 7.8(b)(2) and FED. R. CIV. P. 11

I certify that this brief, exclusive of the Table of Contents and Table of Authorities, contains 4,607 words as identified by the word count feature in Microsoft Word.

**BARRON & NEWBURGER, P.C.**

By:    /s/ Brit J. Suttell
           BRIT J. SUTTELL, ESQUIRE

Counsel for Defendant

22

## CERTIFICATE OF SERVICE

I certify that on July 23, 2026, a true copy of the foregoing document was served on all counsel of record via CM/ECF.

**BARRON & NEWBURGER, P.C.**

By:    /s/ Brit J. Suttell
        BRIT J. SUTTELL, ESQUIRE

Counsel for Defendant

23