# Exhibit C

## *Jackson v. Direct Bldg. Supplies LLC*

United States District Court for the Middle District of Pennsylvania

January 17, 2024, Decided; January 17, 2024, Filed

No. 4:23-CV-01569

**Reporter**

2024 U.S. Dist. LEXIS 8811 *; 2024 WL 184449

GERARD JACKSON, Plaintiff, v. DIRECT BUILDING SUPPLIES LLC, Defendant.

**Subsequent History:** Motion denied by *Jackson v. Direct Bldg. Supplies LLC, 2024 U.S. Dist. LEXIS 72423, 2024 WL 1721144 (M.D. Pa., Apr. 22, 2024)*

Motion denied by, Without prejudice *Jackson v. Direct Bldg. Supplies LLC, 2025 U.S. Dist. LEXIS 75103 (M.D. Pa., Apr. 21, 2025)*

**Counsel:  [*1]** For Gerard Jackson, individually and on behalf of all others similarly situated, Plaintiff: Anthony I Paronich, Broderick Law, P.C., Hingham, MA; Jeffrey M. Bower, Bower Law Associates, PLLC, State College, PA; Kevin L Hall, Tucker Arensberg, P.C., Camp Hill, PA.

For Direct Building Supplies, LLC, doing business as, ReNu Solar, Defendant: Brian J. Murren, Kevin L Hall, Tucker Arensberg, P.C., Camp Hill, PA.

**Judges:** Matthew W. Brann, Chief United States District Judge.

**Opinion by:** Matthew W. Brann

# Opinion

**MEMORANDUM OPINION**

## I. BACKGROUND

In October 2023, Plaintiff, Gerard Jackson, filed a one-count amended complaint against Defendant, Direct Building Supplies, doing business as Renu Solar.[1]  In November 2023, Direct Building Supplies filed a motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim.[2] It also moves to strike Jackson's class allegations pursuant to *Federal Rule of Civil Procedure 12(f)*.[3] The motion is now ripe for disposition; for the reasons that follow, it is denied.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under *Federal Rule of Civil Procedure 12(b)(6)*, courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly* [4] and *Ashcroft v. Iqbal*,[5] "[t]o survive **[*2]** a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by

---

[1] Doc. 20.

[2] Doc. 22.

[3] *Id.* at 5-6.

[4] *550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*.

[5] *556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

[6] *Id. at 678* (quoting *Twombly, 550 U.S. at 570*).

*Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[8] Normally, to go consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[9] But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion. Courts may consider any documents that are integral or explicitly relied upon in the complaint.[10] "However, **[*3]** before materials outside the record may become the basis for a dismissal, several conditions must be met."[11] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[12] It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document.[13]

In this matter, Direct Building Services has attached an email described in the Amended Complaint to its Reply Brief to substantiate its allegations that Jackson may actually have solicited Direct Building Services' call.[14] But while Jackson references this email in his amended complaint,[15] this Court cannot find that it is "integral" to the amended complaint. This email only adds context to support the plausibility that Jackson received calls from Direct Building Services, and is not actually necessary to establishing his TCPA claims. Jackson does not reference the contents of this email; he references the simple fact that Direct Building Services' employee emailed him, in support of his allegation that Direct Building Services contacted him to solicit the sale of solar panels.[16] **[*4]** Nor does this proposition hinge solely upon the email; Jackson also alleges that the number from which he received a prior call was advertised as Direct Building Services' phone number.[17]

Direct Building Services also inspects various TCPA lawsuits filed by Jackson which it asserts were filed with different phone numbers listed for Jackson.[18] Direct Building Services points to the suit against it in the Court of Common Pleas of Centre County, alleging calls to (814) 238-5007; this lawsuit, alleging calls to (814) 876-XXXX; and three separate class actions filed before this Court in 2020, 2021, and 2023, alleging calls to (814) 238-XXXX, (814) 876-XXXX, and (814) 238-XXXX.[19] Direct Building Services contends that these "inconsistencies" concerning which telephone constitutes Jackson's residential number make Jackson an inadequate class representative.[20]

---

[7] *Connelly v. Lane Construction Corp., 809 F.3d 780, 787 (3d Cir. 2016)* (internal quotations and citations omitted).

[8] *Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)*.

[9] *See* *Fed. R. Civ. P. 12(d)*.

[10] *Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)*.

[11] *Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)*.

[12] *Id.*; *see also* *Kaempe v. Myers, 367 F.3d 958, 965, 361 U.S. App. D.C. 335 (D.C. Cir. 2004)*; *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)*.

[13] *Faulkner, 463 F.3d at 134*.

[14] Doc. 24-1.

[15] Doc. 20 ¶32.

[16] *Id.* ¶¶24-32.

[17] *Id.*¶31.

[18] Doc. 25 at 3-5.

[19] *Id.*

[20] *Id.* at 5.

However, Direct Building Services' attempt to insert new factual matter into the amended complaint is inconsistent with the purpose of a motion to dismiss, which inspects the adequacy of the *pleadings*. While the Court recognizes that Direct Building Services has based its argument solely on Court filings, only one of these filings **[*5]** relates to the allegations in Jackson's amended complaint at all.[21] And this filing is not "integral" to the complaint, which is based on the calls placed *after* Jackson filed his initial lawsuit against Direct Building Services; it only contextualizes and supports the plausibility of Jackson's assertion that he received unsolicited calls from Direct Building Services. Some courts have found at summary judgment that a TCPA plaintiff who owns multiple cellphones specifically for the purpose of orchestrating TCPA litigation does not have standing to sue, but such a finding is only appropriate after discovery.[22] Even considering Jackson's prior filing against Direct Building Services, all it shows is that Jackson has had two cellphone numbers at different points in time. This Court must still assume the truth of Jackson's allegation that the cellphone number specified in this complaint is his actual residential phone number.

Believing it has laid the groundwork to cast doubt upon whether Jackson's phone number is in fact residential, Direct Building Services disputes Jackson's allegation that his phone bill proves the residential character of his cellphone number.[23] As Jackson alleges this **[*6]** fact without attaching the phone bill, Direct Building Services "requests that this Court require Plaintiff provide his phone bill to substantiate his otherwise bald allegations concerning the residential nature of the phone number (814) 876-XXXX as part of its

consideration of the instant Motion."[24] But Jackson's phone bill is also not integral to his complaint, and the Court may take his assertion about the phone bill to be true for purposes of dismissal.

Finally, based on an audio recording of Jackson's call which is purportedly in its possession, Direct Building Services states that Jackson gave express written consent to receive its calls under the false name "Barry Johnson."[25] These allegations are based upon evidence outside the scope of the complaint and fall far outside of the scope of dismissal. If true, Direct Building Services' allegations are significant to its affirmative defense, but that affirmative defense is irrelevant here. A motion to dismiss evaluates the sufficiency of the *plaintiff's* allegations, and no defense of consent is apparent from the face of Jackson's complaint.[26]

All the documents referenced by Direct Building Services' Reply Brief are only **[*7]** tangentially related to Jackson's amended complaint. Therefore, this Court will not consider the attached email, referenced court filings or the allegations which Direct Building Services' bases upon its supposed recording of Jackson's call.

## B. Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of

---

[21] *Id.* at 2.

[22] *Stoops v. Wells Fargo Bank, N.A., 197 F.Supp. 3d 782, 800 (W.D. Pa. 2016)*.

[23] Doc. 25 at 6.

[24] *Id.* at 7.

[25] Doc. 25 at 3 ("To the extent any call was placed to Plaintiff to (814) 476-XXXX, it was made after Defendant received express written consent for contact from an individual named "Barry Johnson" to contact that number . . . it would appear 'Barry Johnson,' is in fact the Plaintiff in this matter. From these facts and inferences that can be deduced therefrom, Plaintiff cannot adequately represent his proposed putative class.").

[26] *See Rosenberg v. LoanDepot.com LLC, 435 F.Supp. 3d 308, 318 (D. Mass. 2020)*; *see also Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1175* (explaining that affirmative defenses such as a statute of limitations may only be considered on a motion to dismiss if the bar is "apparent on the face of the complaint.").

this motion, are as follows.

Gerard Jackson, a Pennsylvania resident, placed his number on the National Do Not Call Registry.[27] Jackson alleges that his telephone number is residential, used for personal calls only, and not associated with a business or registered to a business.[28] He further alleges that the telephone bill for this number only lists his own name.[29]

Direct Building Services offers solar services,[30] and makes telemarketing calls to consumers to generate leads.[31] Because Jackson received telemarketing calls from Direct Building Services despite placing his name on the Do Not Call Registry, he filed suit against it in early 2021.[32] But this only marked the beginning of this dispute. Direct Building Services placed five more telemarketing calls to Jackson from August 9, 2021, through September 28, 2021. [*8] [33] Each call which was answered followed a similar script: the caller advertised residential solar electric product and installation services offered by Direct Building Services.[34]

Jackson highlights a particular call in his amended complaint.[35] According to Jackson, a September 2, 2021 call using a "spoofed Caller ID" began with a similar telemarketing pitch, from someone identifying himself as "Edmund."[36] After Jackson answered Edmund's questions, he was transferred to someone identifying himself as "Jacob."[37] This person continued to discuss the sale of solar panels with Jackson until the phone disconnected.[38] Jacob then immediately called Jackson back that same day, which transmitted Direct Building Services' advertised telephone number to Jackson.[39] Jackson then received an email from the telemarketer, "Jacob Dimpsey," which confirmed that the call was attributable to Direct Building Services.[40]

Jackson again filed suit.[41] Yet still, he received four more calls from Direct Building Services on July 5, July 19, August 1, and September 8, 2023.[42] These calls, like the previous ones, followed a similar script advertising Direct Building Services' solar products.[43] Jackson [*9] states that "the calls were clearly sent by the Defendant promoting their goods as counsel for the Defendant provided a recording of the final call to counsel for the Plaintiff."[44] Jackson alleges that he never consented to any of these calls.[45]

Based on these facts, Jackson brings a class action suit against Direct Building Services for violations of the *Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227*.[46] He seeks to represent a class tentatively defined as follows:

> All persons in the United States whose (1) telephone numbers were on the National Do

---

[27] Doc. 20 ¶¶6, 18.

[28] *Id.* ¶19-21.

[29] *Id.* ¶22.

[30] *Id.* ¶15.

[31] *Id.* ¶16.

[32] *Id.* ¶23.

[33] *Id.* ¶24

[34] *Id.* ¶¶25-26.

[35] *Id.* ¶¶27-31.

[36] *Id.* ¶27.

[37] *Id.* ¶28.

[38] *Id.* ¶29.

[39] *Id.* ¶31.

[40] *Id.* ¶32.

[41] *Id.* ¶33.

[42] *Id.* ¶¶33-35.

[43] *Id.* ¶¶36-37.

[44] *Id.* ¶38.

[45] *Id.* ¶40.

[46] *Id.* at 10.

Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of the Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.[47]

## C. Analysis

Direct Building Services argues that claims under *TCPA section 227(c)*'s private right of action are statutorily unavailable for calls placed to cellphones, and that in any case Jackson has failed to plausibly allege a violation of the TCPA. This Court rejects both arguments.

The TCPA sought to curb the invasion of privacy caused by abusive telemarketing practices.[48] One of the TCPA's reforms provides for the Do Not Call registry, a "consumer-driven process" to limiting telemarketing [*10] calls.[49] Any "residential telephone subscriber" may place his name on the National Do Not Call Registry, and placing a call to any "residential telephone subscriber" whose name is on the National Do Not Call registry is an abusive telemarketing act.[50] Consumers may then bring suit through *47 U.S.C. § 227(c)*'s private right of action if two telemarketing calls are made within a twelve-month period.[51]

In support of its motion to dismiss, Direct Building Services argues that cellphone numbers are not "residential."[52] But while our Court of Appeals has not expressly decided this issue, it is far from a novel question. The weight of existing authority indicates that cellphone users may be considered residential telephone subscribers, although whether a cellphone is used for residential purposes involves a more fact-intensive question. In addition to this persuasive authority, *subsection 227(c)* and the TCPA's text, structure, and purpose all belie Direct Building Services' reading.

The Eastern District of Pennsylvania has recently opined that "[t]he consensus in this Circuit is that Do Not Call claims may apply to cell phones."[53] This consensus is well-founded. Regulations implemented shortly after the TCPA was passed further define [*11] residential subscribers to include a "subscriber to a telephone exchange service that is not a business subscriber," a definition which plainly does not distinguish between cellphones and landline phones.[54] Therefore, the Federal Communications Commission, which was empowered to implement the TCPA's Do Not Call provisions through administrative rulemaking,[55] has explicitly noted that because "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections . . . wireless subscribers may participate in the national do-not-call list."[56]

The United States Court of Appeals for the Fourth Circuit has applied the logical next step from this

---

[47] *Id.* ¶43.

[48] *Barr v. Am. Ass'n of Political Consultants, 591 U.S. 610, 140 S.Ct. 2335, 2343, 207 L. Ed. 2d 784 (2020)*; *Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 132 S.Ct. 740, 181 L. Ed. 2d 881 (2012)*.

[49] *Krakauer v. D.I.S.H. Network, L.L.C., 925 F.3d 643, 649-50 (4th Cir. 2019)*.

[50] *47 U.S.C. § 227(c)(3)*; *47 C.F.R. §§ 64.1200(c)(2)*.

[51] *47 U.S.C. § 227(c)(5)*.

[52] Doc. 23 at 16.

[53] *Dudley v. Vision Solar, LLC, No. 21-659, 2021 U.S. Dist. LEXIS 135609, at *13 (E.D. Pa. July 21, 2021)*; *see also Atkinson v. Choice Home Warranty, No. 22-04464, 2023 U.S. Dist. LEXIS 5570, at *12-13 (D.N.J. Jan. 11, 2023)*.

[54] *47 C.F.R. § 64.2305(d)*.

[55] *47 U.S.C. § 227(c)(1)*.

[56] *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,18 F.C.C. Rcd. 14014, at *63-64 (F.C.C. July 3, 2003)*; *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)* ("considerable weight should be accorded" to an agency's "construction of a statutory scheme it is entitled to administer").

rulemaking decision: a number placed on the Do Not Call Registry is presumptively residential for purposes of *section 227(c)*'s private right of action, else it would not have been registered in the first place.[57] The United States Court of Appeals for the First Circuit has likewise opined: "[the] argument that cell phone users are not 'residential telephone subscribers' runs headlong into the FCC's express statements to the contrary."[58] Other courts have found similarly.[59]

The **[*12]** contrary authority cited by Direct Building Services relies on two ill-founded textual arguments. In *Shelton v. Fast Advance Funding, LLC*, which predated *Dudley v. Vision Solar*, the Eastern District of Pennsylvania opined on the term "residential telephone" in dicta.[60] It first noted that "residential" means "used as a residence or by residents," and "resident" means "living in a place for some length of time," or "one who resides in a

place."[61] Therefore, that court stated that the "plain language" of the term "residential telephone" limits that term to phones exclusively used in a residence, and therefore excludes "a cellular telephone, which can be used anywhere."[62] However, "plain language" is not a magical incantation. A statute's "plain language" is indeed decisive, but only when that language is susceptible to just one meaning—that is what makes the language "plain." Otherwise, appealing to plain language when attempting to define ambiguous terms takes the conclusion for granted.

"Slicing a statute into phrases while ignoring their contexts" is a "formula for disaster"[63] because "[t]he full **[*13]** body of a text contains implications that can alter the literal meaning of individual terms."[64] *Shelton v. Fast Advance Funding, LLC*, articulates a wooden reading of the TCPA's text which obscures its ambiguity by fixating on the word "residential" alone, rather than placing it in semantic context. *Section 227(c)(1)* does not merely use the term "residential" or "residential telephone;" in describing the Do Not Call registry, it refers to a "residential telephone subscriber."[65] While this language is facially ambiguous, the best reading of the word "residential" is not that it modifies the "telephone," but rather that "residential" and "telephone" *both* modify the "subscriber." So instead of describing a "subscriber" who owns a "residential telephone," *Section 227(c)(1)* describes a "telephone

[57] *Krakauer, 925 F.3d 643, 657 (4th Cir. 2019)*.

[58] *Murray v. Grocery Delivery E-Servs., 55 F.4th 340, 348 (1st Cir. 2022)*.

[59] *See, e.g., Chennette v. Porch.com, Inc., 50 F.4th 1217, 1223-24 (9th Cir. 2022)* (finding that cellphone used for both business and personal purposes was not residential, but noting that "During oral argument, defendants conceded that cell phones can be 'residential' for purposes of § 277(c)"); *Strange v. ABC Co., No. CV 19-1361, 2021 U.S. Dist. LEXIS 38882, at *10-11 (W.D. La. Mar. 1, 2021)*.

[60] *See **Shelton v. Fast Advance Funding, LLC, 378 F.Supp. 3d 356, 362 n.7 (E.D. Pa. 2019)***, aff'd, *No. 19-2265, 805 Fed. Appx. 156, 2020 U.S. App. LEXIS 6676 (3d Cir. Mar. 3, 2020)*. Other decisions have relied upon the same "plain language" interpretation in *Shelton*. *See Gaker v. Q3M Ins. Sols., No. 3:22-CV-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919, at *6-7 (W.D.N.C. Feb. 7, 2023)* (Cayer, M.J.) (citing *Shelton* for its interpretation of this language); *Cunningham v. Politi, No. 4:18-CV-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102447, at *10-11 (E.D. Tex. Apr. 30, 2019)* (Nowak, M.J.), *report and recommendation adopted*, *2019 U.S. Dist. LEXIS 102050 (E.D. Tex. Apr. 30, 2019)*; *Cunningham v. Britereal Mgmt., No. 4:20-cv-144-SDJ-KPJ, 2020 U.S. Dist. LEXIS 236135, at *16-17 (E.D. Tex. Nov. 20, 2020)* (Johnson, M.J.), *report and recommendation adopted*, *2020 U.S. Dist. LEXIS 235956 (Dec. 16, 2020)*.

[61] *Id.* (citing *Residential*, https://www.merriam-webster.com/dictionary/residential *and Resident*, https://www.merriam-webster.com/dictionary/resident).

[62] *Id.*

[63] *Herrmann v. Cencom Cable Assocs., 978 F.2d 978, 982 (7th Cir. 1992)* (Easterbrook, J.).

[64] ANTONIN SCALIA & BRIAN A. GARNER, READING LAW 356. *See also Yates v. United States, 574 U.S. 528, 536, 135 S. Ct. 1074, 191 L. Ed. 2d 64 (2015)* (Ginsburg, J.).

[65] *47 U.S.C. § 227(c)(1)*.

subscriber" who has subscribed for "residential," *i.e.*, personal, purposes.[66] "Residential" is therefore used in the broader sense of "relating to a resident" to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.

The structure of subsection 227(c) itself supports the point. The subsection never references any such thing as a "residential telephone;" only [*14] "telephone subscribers" and "residential subscribers."[67] When Congress authorizes the F.C.C. to create the Do Not Call registry in section 227(c)(3), it describes a list of "telephone numbers" held by "residential subscribers:" "a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations."[68] Congress again refers to "residential subscribers" rather than "residential telephones" in section 227(c)(3)(E). Finally, in a subsequent amendment which seems to endorse the F.C.C.'s understanding of a "residential subscriber" as a non-business subscriber rather than defying that distinction, section 227(a)(1)(2)(A) distinguishes between a "business subscriber" and a "residential subscriber."[69]

Contrary to *Shelton*'s reasoning, the TCPA's broader structure supports rather than undermines this reading of the term "residential telephone subscriber." *Shelton*'s second textual argument relies on the *expressio unius* canon, which reasons that the expression of one thing implies the exclusion of others. The fact that the TCPA references "cellular telephone service" in the prior subsection supposedly "evidenc[es] that both Congress and the FCC were aware of the distinction between a cellular telephone [*15] and a residential telephone and purposely protected only 'residential telephone subscribers' under §227(c)."[70] But "[t]he *expressio unius* canon applies only when 'circumstances support a sensible inference that the term left out must have been meant to be excluded.'"[71] As Congress also referred to a "residential telephone *line*" in section 227(b),[72] this same logic can be turned on its head. Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the registry is limited to a "residential telephone *line*," as Congress used that term in the preceding subsection.[73]

---

[66] See *Mantha v. Quotewizard.com, LLC, No. 19-12235-LTS, 2022 U.S. Dist. LEXIS 19502, at *13 (D. Mass. Feb. 3, 2022)* ("[T]he inquiry to determine whether a phone number qualifies as a 'residential telephone subscriber' focuses on whether the subscriber has and uses the phone for residential purposes.").

[67] 47 U.S.C. §§ 227(c)(2) ("telephone subscribers"), 227(c)(3) ("residential subscribers"), 227(c)(3)(E) ("residential subscriber"), 227(c)(3)(C) ("telephone subscriber"). The broader term "telephone subscriber" is never used to describe the persons placed on the Do Not Call registry, but instead is used when describing notice and comment procedures for the F.C.C.'s administrative rulemaking.

[68] 47 U.S.C. § 227(c)(3).

[69] 47 U.S.C. § 227(a)(2)(A) ("The term 'established business relationship' . . . shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber."). Although this subsection explicitly notes that it applies "for purposes only of subsection (b)(1)(C)(i)," it nevertheless demonstrates Congress' ratification of the F.C.C.'s

residential subscriber—business subscriber dichotomy. See *Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60, 78, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992) (Scalia, J., Concurring)* (opining that while Title IX's implied private right of action may not have originally permitted monetary damages, subsequent legislation demonstrated Congress's understanding of this reading and therefore ratified it).

[70] **Shelton, 378 F.Supp. 3d at 363 n.7**; Gaker, 2023 U.S. Dist. LEXIS 44919, at *6-7; Cunningham v. Britereal Mgmt., 2020 U.S. Dist. LEXIS 236135, at *16-17; 47 U.S.C. § 227(b)(1)(A)(iii)., (b)(2)(C), (b)(2)(H).

[71] N.L.R.B. v. SW General, Inc., 580 U.S. 288, 137 S. Ct. 929, 197 L. Ed. 2d 263 (2017).

[72] 47 U.S.C. § 227(b)(1)(B) (emphasis added).

[73] Alternatively, one district court reads the term "residential" to describe a subscriber's "telephone" but concludes that "residential" telephones, rather than standing in contrast to cellular telephones, are a broad category that subsumes the term. See *Tessu v. AdaptHealth, LLC, No. SAG-23-0364, 2023 U.S. Dist. LEXIS 145211, at *6 n.1*

*Section 227(c)*'s focus on the telephone subscriber demonstrates that the term "residential" is a "functional term not tethered to a particular technology,"[74] focusing instead on the subscriber's privacy rights. This is in stark contrast to other sections of the statute, describing technology such as a "telephone facsimile machine," a "cellular telephone service," and indeed, a "residential telephone *line*."[75] *Section 227(c)*'s focus on the "telephone subscriber" who uses his telephone for "residential" purposes is underscored by the full context of *section 227(c)(1)*, which draws attention to the **[\*16]** subscriber's privacy rights rather than his telephone's technological capabilities. "The Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."[76]

This reading is confirmed by the only reference to "residential telephone subscribers" in the TCPA's Congressional findings, which speaks broadly to privacy interests: "evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy."[77] As was true in 1991 and as is more true today, cellphones are often used in the residence for personal purposes as well as in other locations, and indeed many exclusively use cellphones in their residence and do not own landline phones.[78] If anything, telemarketing calls

to personal cellphones pose a *greater* invasion of privacy to telephone subscribers than do telemarketing calls to landline phones, because they can invade one's privacy at any time and in any place.

"The TCPA cannot be read to regulate **[\*17]** unsolicited telemarketing only when it affects the home."[79] As the Third Circuit has instructed, "because the TCPA is a remedial statute, it should be construed to benefit consumers."[80] Indeed the Third Circuit has stated in a different context that "[a]lthough it is true that the TCPA placed particular emphasis on intrusions upon the privacy of the home in 1991, this expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls."[81]

Because of the F.C.C. contrary regulations, *Shelton*'s burden was not to offer the best interpretive argument, but to offer *section 227(c)*'s only plausible construction. Yet the statute's language is ambiguous at best, and therefore the F.C.C.'s interpretation is at least a "permissible construction of the statute."[82] There is little reason to doubt the interpretation adopted by the majority

---

[74] *Mantha, 2022 U.S. Dist. LEXIS 19502, at \*8-9*.

[75] *Id.* at 8-9 (citing *47 U.S.C. §§ 227(d)(2)*, *(b)(2)(C)*); *47 U.S.C. § 227(b)(1)(B)*.

[76] *47 U.S.C. § 227(c)(1)*.

[77] ***Act Dec. 20, 1991, Pub. L. 102-243, § 2, 105 Stat. 2394***.

[78] *See In re Rules, 18 F.C.C. Rcd. at 14038-39* ("wireless subscribers

*(D. Md. Aug. 17, 2023)* ("[The TCPA does not] draw an express distinction between a residential telephone and a cellular telephone. It simply makes reference at different points to each, but does not provide that one could not be subsumed within the other.").

often use their wireless phones in the same manner in which they use their residential wireline phones"); *Klassen v. Solid Quote LLC, No. 23-cv-00318-GPG-NRN, 2023 U.S. Dist. LEXIS 203237, at \*5-6 (D. Colo. Nov. 14, 2023)* ("By the end of 2022, over seventy percent of adults [were] estimated to reside in wireless-only households") (citing STEPHEN J. BLUMBERG AND JULIAN V. LAKE, NATIONAL CENTER FOR HEALTH STATISTICS, WIRELESS SUBSTITUTION: EARLY RELEASE OF ESTIMATES FROM THE NATIONAL HEALTH INTERVIEW SURVEY, JANUARY-JUNE 2022, at 1 (2022)).

[79] ***Cranor v. 5 Star Nutrition, 998 F.3d 686, 691 (5th Cir. 2021)*** (ruling upon *section 227(b)*).

[80] *Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 271 (3d Cir. 2013)*.

[81] *Susinno v. Work Out World Inc., 862 F.3d 346 (3d Cir. 2017)*.

[82] *See Chevron, 467 U.S. at 843*; *47 U.S.C. § 227(c)(2)* (authorizing the Federal Communications Commission to prescribe regulations "to implement methods and procedures for protecting the privacy rights described"); *47 C.F.R. § 64.2305(d)* (defining "residential telephone subscribers").

of courts and the F.C.C. In light of contrary regulations, the statutory argument proffered by Direct Building Services has been rightly maligned as relying on "isolated authority" contrary to "common sense."[83]

Direct Building Services' remaining arguments against Jackson hinge on whether he has plausibly [*18] alleged himself to be a residential telephone subscriber. These arguments can be dismissed in short order because they all demand more from Jackson's amended pleading than is appropriate at the dismissal stage. Ironically, Direct Building Services' assertion that Jackson's status as a residential telephone subscriber is "unsupported" and "conclusory"[84] is itself unsupported and conclusory. Jackson's allegations that his cellphone is for personal use, and that it is registered on the Do Not Call Registry, are presumptively sufficient for his allegation to be plausible.[85] It is not clear what else Direct Building Services would require of Jackson's complaint for it to survive dismissal.

## D. Motion to Strike Analysis

### 1. Law

When pleadings contain "redundant, immaterial, impertinent, or scandalous matter," a party may move to strike under *Federal Rule of Civil Procedure 12(f)*.[86] The narrow purpose of a motion

to strike is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."[87] District Courts have broad discretion in granting a *Rule 12(f)* motion to strike.[88] However, striking pleadings is a "drastic remedy" to be used "sparingly."[89]

"District courts within the Third Circuit typically conclude that [*19] motions to strike class action allegations filed before plaintiffs move for class certification are premature."[90] Because "the shape and form of a class action evolves only through the process of discovery,"[91] "courts rarely grant motions to strike under *Rule [12(f)* or *Rule] 23(d)(1)(D)* prior to class discovery, doing so only where '[n]o amount of additional class discovery will alter th[e] conclusion' that the class is not maintainable."[92]

### 2. Fail-Safe Class

One rare instance in which courts do grant motions to strike prior to class discovery is where a plaintiff

---

to strike pleadings relating to class actions by stating that in evaluating class actions, the court may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.").

[87] *McInerney v. Moyer Lumber & Hardware, Inc., 244 F.Supp. 2d 393, 402 (E.D. Pa. 2002)*.

[88] *Wirt v. Bon-Ton Stores, Inc., 134 F.Supp. 3d 852, 857 (M.D. Pa. 2015)*.

[89] *Dann v. Lincoln Nat'l Corp., 274 F.R.D. 139, 142 (E.D. Pa. 2011)*.

[90] *Reed v. Friendly's Ice Cream, LLC, No. 15-0298, 2016 U.S. Dist. LEXIS 62197, at * (M.D. Pa. May 11, 2016)*.

[91] *Abdallah v. The Coca-Cola Co., No. 1:98-CV-3679, 1999 U.S. Dist. LEXIS 23211, at *6 (N.D. Ga. July 19, 1999)*.

[92] *Goode v. LexisNexis Risk & Info. Analytics, 284 F.R.D. 238, 244 (E.D. Pa. 2012)* (citing *P.V. ex rel. Valentin v. Sch. Dist. of Phila., No. 2:11-CV-04027, 2011 U.S. Dist. LEXIS 125370, at *12 (E.D. Pa. Oct. 31, 2011)* and *Thompson v. Merck & Co., Inc., Nos. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 2004 U.S. Dist. LEXIS 540, at *9 (E.D. Pa. Jan. 6, 2004)*).

---

[83] **Hirsch v. USHealth Advisors, LLC, 337 F.R.D. 118, 131 (N.D. Tex. 2020)**. Even if this Court were to accept this statutory interpretation argument, Direct Building Services has not explained why the F.C.C.'s ruling would not prohibit such a holding. See *Tessu, 2023 U.S. Dist. LEXIS 145211, at *10-13*.

[84] Doc. 23 at 15.

[85] *In re Rules, 18 F.C.C. Rcd. at 14038-39*; *Krakauer, 925 F.3d at 649-50*; *Barton v. Temescal Wellness, LLC, No. 4:20-cv-40114-TSH, 525 F. Supp. 3d 195, 2021 U.S. Dist. LEXIS 42211, at *13-14 (D. Mass. Mar. 8, 2021)*.

[86] *Federal Rule of Civil Procedure 23(d)(1)(D)* also authorizes courts

Jackson v. Direct Bldg. Supplies LLC

has alleged a "fail-safe class." "A fail-safe class is one that defines its members by the plaintiff's liability — all individuals wronged by the defendant, in the classic formulation."[93] "[S]uch a class impermissibly skirts the bar of *res judicata*" because "either the class members win or, if the defense prevails, no class exists, and the putative class members, unbound by any judgment, are free to pursue individual claims."[94]

Direct Building Services states that Jackson's class depends on whether someone received a "telemarketing or 'solicitation call,'" and points out that "telephone solicitation" is statutorily defined to include only persons who received **[*20]** such calls without consent.[95] But Direct Building Services is mistaken. The term "solicitation" does not appear anywhere within Jackson's class definition.[96] As Jackson points out in his Brief in Opposition, he intentionally used the term "telemarketing" to ensure that no analysis of consent was contained within his class definition.[97] Instead, he intended telemarketing to "mean what it says, which is 'selling or advertising by telephone.'"[98] So there is no basis to claim that he has proffered a fail-safe class.

As Jackson notes, his case is then indistinguishable from *Jackson v. Meadowbrook Financial Mortgage Bankers Corp.* [99] In *Jackson v. Meadowbrook*, I refused to strike an identical TCPA class definition offered by this same plaintiff alleging this same

cause of action.[100] Therefore, minimal analysis is required; as many courts within this Circuit have found, Jackson has avoided the fail-safe concerns posed by *Zarichny v. Complete Payment Recovery Services* by defining his class without reference to whether the class members first consented to be called.[101]

### 3. Class Action Requirements

Even if a class is not fail-safe, class allegations may **[*21]** be struck where "no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under *Rule 23*."[102] To be certified, a class must satisfy predominance and superiority under *Rule 23(b)(3)*. This requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy."[103] A successful class must also meet the following four prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable [numerosity];
>
> (2) there are questions of law or fact common to the class [commonality];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of

---

[93] *Zarichny v. Complete Payment Recovery Servs., 80 F.Supp. 3d 610, 624 (E.D. Pa. 2015)*.

[94] *Id.*

[95] Doc. 34 at 13 (citing *47 U.S.C. § 227(a)(4)*).

[96] *See* Doc. 20 ¶43.

[97] Doc. 24 at 14-15.

[98] *Id.* at 15-16.

[99] *No. 4:22-CV-01659, 2023 U.S. Dist. LEXIS 41211 (M.D. Pa. Mar. 10, 2023)*.

[100] *Compare* Complaint, Doc. 1 ¶31, *Jackson v. Meadowbrook Fin. Mortg. Bank*, No. 4:22-CV-01659 (M.D. Pa.), *with* Doc. 20 ¶43.

[101] *See Abella v. Student Aid Center, No. 15-3067, 2015 U.S. Dist. LEXIS 147299, at *12 (E.D. Pa. Oct. 30, 2015)*; *Johnson v. Ally Financial Inc., No. 1:16-CV-1100, 2017 U.S. Dist. LEXIS 126817 (M.D. Pa.)*, *O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC, No. 16-3563, 2017 U.S. Dist. LEXIS 22402, at *13, (E.D. Pa. Feb. 16, 2017)*.

[102] *Luciano v. Teachers' Ins. and Annuity Ass'n of Am. - Coll. Ret. Equities Fund, No. 15-6726 (ZNQ) (DEA), 2022 U.S. Dist. LEXIS 64671, at *3 (D.N.J. Apr. 7, 2022)*.

[103] *Fed. R. Civ. P. 23(b)(3)*.

the class [typicality]; and

(4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].[104]

But again, "a motion for class certification is a more appropriate vehicle for arguments about class propriety."[105] Here, Direct Building Services contests the commonality and numerosity requirements.

Direct Building Services first argues that Jackson "has not **[*22]** alleged that these calls were placed at the same time, by the same caller, or featured the same conversation."[106] Somehow, counsel has made the same argument, in the exact same language, that I already rejected in *Jackson v. Meadowbrook*.[107] I reject it here for the same reasons; issues concerning the relationship between an alleged telemarketer and putative class members are "difficult to resolve without discovery," and it is too early in the litigation to make any such judgment.[108] Moreover, "[c]ommonality does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."[109]

Direct Building Services also argues that Jackson's pleadings cannot possibly satisfy the numerosity requirement, which is generally satisfied when at least 40 class members are present,[110] because the "[t]he Complaint is devoid of any other allegations of unwanted calls being made to anyone other than plaintiff."[111] *Jackson v. Meadowbrook* also rejected this argument.[112] Once again, discovery is needed. The mere fact that a plaintiff received **[*23]** an unsolicited telemarketing call renders plausible the assertion that at least 40 other individuals did as well.[113] Requiring Jackson to list other class members who Direct Building Services called *before* he has access to such names, which are currently within the exclusive possession of Direct Building Services, would likely result in nearly all class actions being stricken before discovery.

## 4. Individualized Fact Finding

Direct Building Services' last argument concerns individualized fact-finding. As our Court of Appeals has explained, class certification is inappropriate where a class cannot be ascertained "without extensive and individualized fact-finding or 'mini-trials.'"[114] Direct Building Services argues

---

[104] *Fed. R. Civ. P. 23(a)*.

[105] *Luciano, 2022 U.S. Dist. LEXIS 64671, at \*3*.

[106] Doc. 23 at 10.

[107] *2023 U.S. Dist. LEXIS 41211, at \*16* ("Meadowbrook contends that Jackson's class allegations do not satisfy the typicality requirement because although he alleges that Meadowbrook 'made potentially thousands of separate calls to separate potential class members,' he 'has not alleged that these calls were placed at the same time, by the same caller, or featured the same conversation.'").

[108] *Id.* at \*17 (quoting *Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93-94 (3d Cir. 2011)*, *opinion reinstated*, *Nos. 09-3105/09-3532/09-3793, 2012 U.S. App. LEXIS 11946 (3d Cir. Apr. 17, 2012)*).

[109] *Jackson v. Locust Med., LLC, No. 4:22-CV-00424, 2022 U.S.*

---

*Dist. LEXIS 197057, at \*5 (M.D. Pa. Oct. 28, 2022)* (quoting *Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 184 (3d Cir. 2001)*).

[110] *In re NFL Players Concussion Injury Litig., 821 F.3d 410, 427 (3d Cir. 2016)* ("There is no magic number of class members needed for a suit to proceed as a class action. We have set a rough guidepost in our precedents, however, and stated that numerosity is generally satisfied if there are more than 40 class members.").

[111] Doc. 23 at 11.

[112] *Jackson v. Meadowbrook Fin. Mortg. Bank, 2023 U.S. Dist. LEXIS 41211, at \*17 n.76*.

[113] *See id.* ("his factual allegations—namely, that he received three telemarketing calls on the same day, all of which followed a script, al of which came after his attorney sent Meadowbrook a cease-and-desist letter, 'make clear [the] *en masse* nature of the calling.'") (citations omitted).

[114] *Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir.*

that extensive individualized fact-finding would be required to determine whether an individual received more than one telemarketing call.[115] But this twisted logic would mean that TCPA class actions can never be brought. "Had Congress wanted to preclude aggregation of individual TCPA claims, it could have so provided in the TCPA itself or in CAFA [Class Action Fairness Act]."[116] Nor does it appear difficult to determine how many telemarketing calls were placed to class members, **[\*24]** assuming Direct Building Services keeps records of its business calls; this fact can easily be ascertained through a company database.[117]

Direct Building Services also points to Jackson's inclusion of persons called by its agents or third parties as requiring individualized fact-finding.[118] But this is as simple as the fact-finding involved in determining whether someone has received more than one telemarketing call from Direct Building Services itself. Such class members are likely ascertainable from the company databases of any agents or third parties advertising for Direct Building Services, which can be obtained during discovery,[119] and otherwise involves the same or similar claims under the TCPA. That is sufficient for the class to remain intact at this point in the litigation.

## III. CONCLUSION

Defendant's motion to dismiss pursuant to *Rule 12(b)(6)*, and Defendant's motion to strike pursuant to *Rule 12(f)*, are denied.

An appropriate Order follows.

BY THE COURT:

*/s/ Matthew W. Brann*

Matthew W. Brann

Chief United States District Judge

## ORDER

In accordance with the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss (Doc. 22) is **DENIED**.

2. Defendant's answer to **[\*25]** the complaint is due no later than fourteen (14) days from the date of this Order.

BY THE COURT:

*/s/ Matthew W. Brann*

Matthew W. Brann

Chief United States District Judge

---

*2012)*.

[115] Doc. 23 at 12.

[116] *Landsman, 640 F.3d at 95*.

[117] *See Marcus, 687 F.3d at 593* (collecting cases requiring proposed classes to be ascertainable from a company database).

[118] Doc. 23 at 9; *see Gomez v. Campbell-Ewald Co., 768 F.3d 871, 879 (9th Cir. 2014)*, *aff'd*, *577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*.

[119] *See, e.g., Jackson v. Aragon Adver., LLC, No. 4:23-MC-00812, 2023 U.S. Dist. LEXIS 201988 (M.D. Pa. Nov. 9, 2023)*.