# Exhibit D

## *Pero v. Brown-Daub Chevrolet of Nazareth*

United States District Court for the Eastern District of Pennsylvania

June 17, 2026, Decided; June 17, 2026, Filed

CIVIL ACTION NO. 25-7016

**Reporter**

2026 U.S. Dist. LEXIS 134498 *; 2026 LX 377290; 2026 WL 1747214

CATHERINE PERO, individually and on behalf of all others similarly situated v. BROWN-DAUB CHEVROLET OF NAZARETH

**Counsel:** [*1] For CATHERINE PERO, individually and on behalf of all others similarly situated, Plaintiff: ERIC LECHTZIN, LEAD ATTORNEY, ANDREW J. LAPAT, Edelson Lechtzin LLP, Newtown, PA.

For BROWN-DAUB CHEVROLET OF NAZARETH, Defendant: JAMES J. SCANLON, Norris McLaughlin, P.A., Allentown, PA; MICAH BROWN, Norris McLaughlin, Allentown, PA.

**Judges:** TIMOTHY J. SAVAGE, J.

**Opinion by:** TIMOTHY J. SAVAGE

# Opinion

## MEMORANDUM OPINION

**Savage, J.**

The threshold issue in this case is whether a text message is a "telephone call" for purposes of *Section 227(c) of the Telephone Consumer Protection Act (TCPA)*, which prohibits telephone solicitations to numbers on the National Do Not Call Registry (DNCR). Considering the statutory language and the Federal Communications Commission's (FCC) regulations and interpretations, we conclude that text messages are calls for purposes of *Section 227(c) of the TCPA*.

Plaintiff Catherine Pero brought this putative class action against defendant Brown-Daub Chevrolet of Nazareth for violating *Section 227(c) of the TCPA*.[1] Pero alleges she received multiple unwanted text messages from Brown-Daub on her cell phone number which was registered on the DNCR. Brown-Daub moves to dismiss, arguing that the TCPA regulates telephone calls and not text messages.

## Factual Background

In 2021, Pero registered her phone number with the DNCR, a national [*2] list of persons who do not want to receive unsolicited telemarketing messages.[2] In October 2024, Pero gave Brown-Daub her number to receive information about trucks for sale.[3] She later opted out of receiving texts.[4] After Brown-Daub had initially confirmed that she was unsubscribed,[5] a Brown-Daub employee overrode her opt-out request.[6] She received six unwanted texts from January 8, 2025

---

[1] *Section 227(c)(5)* provides a private right of action for a person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]" *47 U.S.C.A. § 227(c)(5)*.

[2] Compl. ¶¶ 12-13, ECF No. 1.

[3] *Id.* ¶ 14.

[4] *Id.* ¶ 16.

[5] *Id.* ¶ 17.

[6] *Id.* ¶ 19.

to March 28, 2025,[7] and an additional two undated texts.[8]

Pero claims a text message alerts and disturbs her.[9] Additionally, she contends the texts are an ongoing nuisance, an invasion of her privacy, and a distraction.[10] Pero claims the texts violated *Section 227(c) of the TCPA*.

**Analysis**

The FCC includes text messages within the ambit of prohibited telephone communications. For years, applying *Chevron* deference, which directed courts to defer to an agency's interpretation of a statute, courts relied on the FCC's determination that text messages were calls for purposes of the TCPA.

*Chevron* deference has been abolished. *Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*. When conducting statutory interpretation, courts are no longer obligated to defer to an agency's interpretation. *Id. at 413*. Instead, they must exercise their independent judgment. *Id. at 412*.

Although they are no longer **[*3]** bound by an agency's interpretation, courts must respect it. *Id. at 394*. Courts may still consider an agency's interpretations because those interpretations are the product of a "body of experience and informed judgment." *Id. at 394* (quoting *Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)*). This is especially true where, as here, Congress explicitly directs an agency to implement the goals of the statute. *See id. at 413* ("[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must

respect the delegation, while ensuring that the agency acts within it.").

In *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, a case where the FCC interpretated the TCPA's definition of "telephone facsimile machine", the Supreme Court instructed district courts to use ordinary principles of traditional statutory interpretation when deciding civil enforcement proceedings. *606 U.S. 146, 168, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*. Where an agency has interpretated a statute, district courts should give it appropriate respect, but they are not bound by it and need not interpret the statute the same way. *Id.*

Guided by these principles, we now decide whether a text message solicitation to a number on the DNCR violates the TCPA. We begin with statutory construction.

Statutory Language

When **[*4]** interpreting a statute, we start with the text itself, giving ordinary words their ordinary meaning. *Artis v. District of Columbia, 583 U.S. 71, 83, 138 S. Ct. 594, 199 L. Ed. 2d 473 (2018)* (quoting *Moskal v. United States, 498 U.S. 103, 108, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990)*). The words of a statute are interpreted in accordance with their ordinary meaning at the time of the statute's enactment. *Wis. Cent. Ltd. v. United States, 585 U.S. 274, 284, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018)* (quoting *Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979)*).

Text messages did not exist when the TCPA was enacted.[11] Congress could not have contemplated text messages when it passed the TCPA. But,

---

[7] *Id.* ¶¶ 19, 21-24.

[8] *Id.* ¶ 25.

[9] *Id.* ¶ 26.

[10] *Id.*

[11] The first text message was sent on December 3, 1992. *This Day in History*, History.com (https://www.history.com/this-day-in-history/december-3/first-sms-text-message-sent) (last visited June 12, 2026).

Pero v. Brown-Daub Chevrolet of Nazareth

Congress intended to prohibit more than solicitations by telephone. It also included communications "by message." Clearly, the prohibition was not limited to telephone calls.

*Section 227(a)(4)* defines telephone solicitation as the "initiation of a telephone call or *message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *47 U.S.C.A. § 227(a)(4)* (emphasis added).

The telephone solicitation definition does not include text messages specifically. But, it is not limited to a telephone call. It includes solicitation by message. Congress intended to prohibit intrusive and unwanted contacts using a telephone line.

The TCPA does not define "telephone call or message." So, we must examine its meaning as it was commonly and ordinarily used when Congress **[*5]** enacted the statute in 1991. *Wis. Cent. Ltd., 585 U.S. at 284*. When the TCPA was enacted, "telephone" was defined as "[a]n instrument, apparatus, or device for conveying sound to a distance."[12] A "call" meant "[a] summons or communication by telephone; a telephone conversation."[13] "Message" was defined as "[a] communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another."[14]

A text message is a communication (message) transmitted by a telephone (an agency). Thus, it is a "message" within the scope of the TCPA's prohibition of unwanted telephone solicitations.

---

[12] *Telephone*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00248465 (last visited June 12, 2026).

[13] *Call*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00031625 (last visited June 12, 2026).

[14] *Message*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00144966 (last visited June 12, 2026).

FCC Interpretation of *Sections 227(c)* and *(b)*

Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "prescribe regulations" to protect their privacy rights. *47 U.S.C.A. §§ 227(c)(1)-(2)*.

There is no doubt that Congress delegated broad power to the FCC to implement Congress's goal to protect telephone subscribers from intrusive and unwanted telephone calls and messages. The FCC did not intrude on Congressional prerogative or exceed its mandate. Thus, we accord its interpretation **[*6]** considerable weight in our analysis.

The FCC codified its DNCR regulations in *47 C.F.R. § 64.1200*, titled "Delivery Restrictions." The regulations provide that no person or entity shall initiate any telephone solicitation to a residential telephone subscriber registered with the DNCR. *47 C.F.R. § 64.1200(c)(2)*. A "do not call" registration must be honored either indefinitely, until the registration is canceled by the consumer, or until the phone number is removed by the database administrator. *Id.* A person making telephone solicitations is not liable if they can demonstrate the violation was an error and they have routine business practices for complying with the DNCR. *Id. § 64.1200(c)(2)(i)(A)-(E)*.

The FCC has clarified that the DNCR's protections extend to text messages. In *Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, the FCC "codifie[d] that the National Do-Not-Call (DNC) Registry's protections extend to text messages." *89 FR 5098-01, 2024 WL 283571 (F.R.), 5098 (Jan. 26, 2024)*. It warned that "[t]exters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless

number in the DNC Registry." *Id.* at 5099. The Commission explained that the regulation was consistent with **[*7]** court opinions and would "both deter illegal texts and make DNC enforcement easier." *Id.* Additionally, the FCC has explicitly ruled that sending text messages can violate the DNCR provisions of the TCPA. *In The Matter of Emanuel "Manny" Hernandez; Click Cash Mktg., LLC; and Rock Solid Traffic, 33 FCC Rcd 12382, 2018 WL 6830220 at *1 (F.C.C. Dec. 21, 2018)*.

In 2024, the FCC amended the regulations to clarify that *Section 227(c)* applies to any person or entity making telephone solicitations or telemarketing calls or text messages as described in the specific regulations cited above. *47 C.F.R. § 64.1200(e)*; *89 FR 5104* (Jan. 26, 2024).

The FCC has included a text in the definition of a "telephone call" in regulations implementing other TCPA sections. In a regulation interpretating *Section 227(b) of the TCPA*, the FCC explained that the TCPA's prohibition on making calls using an autodialer "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd. 14014, 14115 (2003)*.

The Supreme Court and lower courts have acknowledged this interpretation and have not rejected it. See *Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 615 n.1, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020)* (identifying the regulation as an example of the robocall restriction barring both automated voice calls and text messages); *Gomez v. Campbell-Ewald Co., 768 F.3d 871, 874 (9th Cir. 2014)*, *aff'd*, *577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*; *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2008)*.

The FCC issued a ruling in 2012 where it considered **[*8]** whether a confirmation text violated the TCPA automatic dialing system prohibitions. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling, 27 F.C.C. Rcd. 15391, 15392 (2012)* ("*SoundBite* decision"). The Commission noted it "had concluded that the TCPA's prohibition on autodialers encompasses both voice and text calls, including short message service (SMS) calls," citing its 2003 regulation. *Id.*

Although this interpretation applies to *Section 227(b)*, it shows the FCC has determined that a "text message" is a "telephone call" for purposes of the TCPA. The same phrases are included in both *Sections 227(b)* and *(c)*, so we presume they have the same meaning and will conclude the interpretation applies to both sections. *See Pereira v. Sessions, 585 U.S. 198, 211, 138 S. Ct. 2105, 201 L. Ed. 2d 433 (2018)* (quoting *Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 571, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012)*); *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 105 (3d Cir. 2023)*.

When evaluating *Section 227(b)*, the Third Circuit held that the TCPA's prohibitions on using automatic dialing systems included text messages. *Gager v. Dell Fin. Servs., L.L.C., 727 F.3d 265, 269 n.2 (3d Cir. 2013)*. In a footnote, the Court approvingly cited the FCC's *Soundbite* decision and the Ninth Circuit's *Satterfield* decision. *Id.* However, *Gager* predated *McLaughlin* and *Loper Bright*. It was decided before *Chevron* deference was abolished. The Third Circuit has not yet considered the issue applying statutory interpretation principles post-*Chevron*.

Six Circuits have determined that a text is a call. *See Breda v. Cellco P'ship, 934 F.3d 1, 4 n.1 (1st Cir. 2019)*; *Cranor v. 5 Star Nutrition, L.L.C., 998 F.3d 686, 690 (5th Cir. 2021)*; *Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365, 370 (6th*

Pero v. Brown-Daub Chevrolet of Nazareth

*Cir. 2015)*; *Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 463 (7th Cir. 2020)*; *Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 986 (9th Cir. 2023)*; *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n, 127 F.4th 303, 307 n.2 (11th Cir. 2025)*.

All but one of these cases were decided while *Chevron* was alive. They all **[*9]** predated *McLaughlin*. Additionally, the *Breda, Cranor, Keating, Gadelhak*, and *Insurance Marketing Coalition* cases analyzed *Section 227(b)*, not *Section 227(c)*. Nevertheless, their reasoning is persuasive.

*Hall*, decided post-*Chevron*, considered whether the plaintiff who had received unwanted text messages had standing to bring an action under *Section 227(c)*. The Ninth Circuit held that the owner and subscriber of a phone number on the DNCR suffered an injury-in-fact for Article III purposes when unsolicited telemarketing calls or text messages were sent to the number. *Hall, 72 F. 4th at 985-986*.

District courts addressing this issue after *McLaughlin* have held that a text is a call for purposes of *Section 227(c)*. *See Wilson v. MEDVIDI Inc., 5:25-cv-03996, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *1, *4 (N.D. Cal. Oct. 7, 2025)* ("nothing in the text, structure, or purpose of the TCPA suggests [a] distinction between written and oral communications"); *Bosley v. A Bradley Hosp. LLC, 25-cv-22336, 2025 U.S. Dist. LEXIS 183986, 2025 WL 2686984, at *1, *5 (S.D. Fl. Sep. 19, 2025)* ("a text message constitutes a 'call' under the TCPA"); *Wilson v. Skopos Fin., LLC, 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638, 2025 WL 2029274, at *1, *4 (D. Or. July 21, 2025)* ("It cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry"); *Duron v. Kings Cap. Holding LLC, 3:25-cv-00149-DCG, 2026 U.S. Dist. LEXIS 6340, 2026 WL 319779, at *1, *6 (W.D. Tex. Jan. 13, 2026)* ("the Court's interpretation aligns with the weight of authority, confirming that text messages are actionable under *§ 227(c)(5)*").

Courts in this district have held that a text is a call for purposes **[*10]** of *Section 227(c)*. *See e.g., Newell v. Child.'s Dental Health Assocs., LLC, Civil Action No. 25-5238, 2026 U.S. Dist. LEXIS 74360, 2026 WL 927378, at *1, *9 (E.D. Pa. Apr. 6, 2026)* (Murphy, J.) ("We agree with the FCC and many courts that have considered the question that the statutory language 'calls' includes text messages"); *Cole v. C/T Install America, LLC, Civil Action No. 25-3531, 2026 U.S. Dist. LEXIS 63254, 2026 WL 916582, at *1 n.1 (E.D. Pa. March 23, 2026)* (Henry, J.) ("[N]othing in the text, structure, or purpose of the TCPA suggests the barring of text messages under *§ 227(c)*...[the Court] conclude[s] that *§ 227(c)* includes text messages within its definition of a 'telephone call.'").

## Conclusion

Considering the statutory language, the FCC regulations, and the decisions of an overwhelming majority of courts, we hold that a text message is a call for purposes of *47 U.S.C. § 227(c)*. Thus, we will deny Pero's motion to dismiss.

## ORDER

**NOW**, this 17th day of June, 2026, upon consideration of Defendant's Motion to Dismiss the First Amended Complaint (Doc. No. 6), and the plaintiff's response, it is **ORDERED** that the motion is **DENIED**.

/s/ Timothy J. Savage

TIMOTHY J. SAVAGE, J.

---

**End of Document**

# *Newell v. Child.'s Dental Health Assocs., LLC*

United States District Court for the Eastern District of Pennsylvania

April 6, 2026, Decided; April 6, 2026, Filed

CIVIL ACTION NO. 25-5238

**Reporter**

2026 U.S. Dist. LEXIS 74360 *; 2026 LX 183365; 2026 WL 927378

JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated v. CHILDREN'S DENTAL HEALTH ASSOCIATES, LLC

## LexisNexis® Headnotes

Civil Procedure > ... > Justiciability > Standing > Burdens of Proof

Constitutional Law > ... > Case or Controversy > Standing > Elements

Evidence > Burdens of Proof > Allocation

Civil Procedure > ... > Injunctions > Grounds for Injunctions > Irreparable Harm

### *HN1* **Standing, Burdens of Proof**

A plaintiff bears the burden of establishing that he has Article III standing for each type of relief sought. To establish standing for injunctive relief, a plaintiff must show: (1) that he is under a threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will prevent or redress the injury. Even if the plaintiff has suffered a previous injury due to the defendant's conduct, the equitable remedy of an injunction is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again. Accordingly, a plaintiff may have standing to pursue damages, but lack standing to seek injunctive relief.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

### *HN2* **Motions to Dismiss, Failure to State Claim**

When considering a motion to dismiss, a court should begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. A court must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to plaintiff. Factual allegations must be enough to raise a right to relief above the speculative level.

Antitrust & Trade Law > Consumer Protection > Telemarketing

Communications Law > Federal

Acts > Telemarketing & Consumer Fraud & Abuse Prevention Act
Business & Corporate Compliance > Communications, Satellite Transmissions & Telecommunications > Federal Acts > Telemarketing & Consumer Fraud & Abuse Prevention Act

Communications Law > Federal Acts > Telephone Consumer Protection Act
Business & Corporate Compliance > Communications, Satellite Transmissions & Telecommunications > Federal Acts > Telephone Consumer Protection Act

### *HN3* **Consumer Protection, Telemarketing**

The Telephone Consumer Protection Act is a consumer protection statute that seeks to protect consumers from invasions of privacy from debt collectors, telemarketers, and spammers alike. *47 U.S.C.S. § 227*. Subsections 227(b) and (c) provide private rights of action for violations of relevant federal regulations. *47 U.S.C.S. §§ 227(b)(3)* and *(c)(5)*. Those regulations are prescribed and updated by the Federal Communications Commission (FCC). *47 C.F.R. § 64.1200*. Congress likewise authorized the FCC to create and maintain a national database of consumers who elect to register their residential phone numbers on the national Do Not Call (DNC) registry. *47 U.S.C.S. § 227(c)(3)*.

Antitrust & Trade Law > Consumer Protection > Telemarketing

Communications Law > Federal Acts > Telemarketing & Consumer Fraud & Abuse Prevention Act
Business & Corporate Compliance > Communications, Satellite Transmissions &

Telecommunications > Federal Acts > Telemarketing & Consumer Fraud & Abuse Prevention Act

Communications Law > Federal Acts > Telephone Consumer Protection Act
Business & Corporate Compliance > Communications, Satellite Transmissions & Telecommunications > Federal Acts > Telephone Consumer Protection Act

### *HN4* **Consumer Protection, Telemarketing**

The Telephone Consumer Protection Act (TCPA) provides a private right of action for individuals who have received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection. *47 U.S.C.S. § 227(c)(5)*. The relevant regulation, *47 C.F.R. § 64.1200(c)(2)*, bars any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. *47 U.S.C.S. § 227(c)(5)*. An individual is entitled to receive up to $500 in damages for each such violation or treble damages if the violation was willful. *47 U.S.C.S. 227(c)(5)(B)-(C)*. The TCPA defines a "telephone solicitation" as the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. *47 U.S.C.S. § 227(a)(4)*. For a claim to survive under this section, a plaintiff must plead that (1) they received multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the Do Not Call List.

Administrative Law > Judicial Review > Standards of Review > Deference to Agency Statutory Interpretation

Communications Law > Federal

Newell v. Child.'s Dental Health Assocs., LLC

Acts > Telephone Consumer Protection Act
Business & Corporate
Compliance > Communications, Satellite
Transmissions &
Telecommunications > Federal
Acts > Telephone Consumer Protection Act

Antitrust & Trade Law > Consumer
Protection > Deceptive & Unfair Trade
Practices > State Regulation

Governments > Legislation > Interpretation

Antitrust & Trade Law > Consumer
Protection > Telemarketing

### *HN5* **Standards of Review, Deference to Agency Statutory Interpretation**

District courts are not absolutely bound by the FCC's interpretation of the Telephone Consumer Protection Act. Instead, district courts must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

Antitrust & Trade Law > Consumer
Protection > Telemarketing

Communications Law > Federal
Acts > Telephone Consumer Protection Act
Business & Corporate
Compliance > Communications, Satellite
Transmissions &
Telecommunications > Federal
Acts > Telephone Consumer Protection Act

Governments > Legislation > Interpretation

### *HN6* **Consumer Protection, Telemarketing**

In all cases of statutory interpretation a court's inquiry begins with the language of the statute. The Telephone Consumer Protection Act's (TCPA) stated intent is to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. *47 U.S.C.S. § 227(c)(1)*. It provides a private right of action for a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed. *§ 227(c)(5)*.

Antitrust & Trade Law > Consumer
Protection > Telemarketing

Communications Law > Federal
Acts > Telemarketing & Consumer Fraud &
Abuse Prevention Act
Business & Corporate
Compliance > Communications, Satellite
Transmissions &
Telecommunications > Federal
Acts > Telemarketing & Consumer Fraud &
Abuse Prevention Act

Communications Law > Federal
Acts > Telephone Consumer Protection Act
Business & Corporate
Compliance > Communications, Satellite
Transmissions &
Telecommunications > Federal
Acts > Telephone Consumer Protection Act

### *HN7* **Consumer Protection, Telemarketing**

Congress authorized the FCC authority to prescribe regulations to implement methods and procedures for protecting the privacy rights described. *47 U.S.C.S. § 227(c)(2)*. In doing so, Congress recognized that those regulations may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase. *47 U.S.C.S. § 227(c)(3)*. Those regulations also prohibit any person from making or transmitting a telephone solicitation to the telephone number of

any subscriber included in such database. *47 U.S.C.S. § 227(c)(3)(F)*. The FCC determined such a database was necessary and enacted the national Do Not Call registry in 2003. Both the TCPA and the Federal Regulations define a "telephone solicitation" as a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. *47 U.S.C.S. § 227(a)(4)*; *47 C.F.R. § 64.1200(f)(15)*.

Governments > Legislation > Interpretation

**HN8** **Legislation, Interpretation**

It's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary, contemporary, common meaning at the time Congress enacted the statute.

Antitrust & Trade Law > Consumer Protection > Telemarketing

Communications Law > Federal Acts > Telephone Consumer Protection Act Business & Corporate Compliance > Communications, Satellite Transmissions & Telecommunications > Federal Acts > Telephone Consumer Protection Act

**HN9** **Consumer Protection, Telemarketing**

The interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning. In one of the Telephone Consumer Protection Act's subsections, *47 U.S.C.S. § 227(b)*, Congress addressed the problem of robocalls by placing restrictions on use of automated telephone equipment. *47 U.S.C.S. § 227(b)*. Subsection (b) prohibits "any person" from making any call using any automatic telephone dialing system or an artificial or prerecorded voice or initiating any

telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. *47 U.S.C.S. § 227(b)(1)(A)*, *(B)*. Despite mentioning "calls" rather than "texts," courts have understood *§ 227(b)* to apply to text messages. It is undisputed that a text message qualifies as a "call" within the compass of *§ 227(b)(1)(A)(iii)*.

Labor & Employment Law > ... > False Claims Act > Scope & Definitions > Original Source

**HN10** **Scope & Definitions, Original Source**

The restrictions placed on "calls" also govern texts pursuant to both *47 U.S.C.S. §§ 227(b)* and *(c)*.

Governments > Legislation > Interpretation

**HN11** **Legislation, Interpretation**

Statutory interpretations which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.

Communications Law > Federal Acts > Telemarketing & Consumer Fraud & Abuse Prevention Act Business & Corporate Compliance > Communications, Satellite Transmissions & Telecommunications > Federal Acts > Telemarketing & Consumer Fraud & Abuse Prevention Act

Tax Law > Federal Taxpayer Groups > Exempt Organizations > Charitable, Religious & Scientific Organizations

**HN12** **Federal Acts, Telemarketing & Consumer Fraud & Abuse Prevention Act**

A telephone solicitation is the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. *47 U.S.C.S. § 227(a)(4)*. Excluded from that definition are calls or messages sent with the receiver's prior express invitation or permission, sent to any person with whom the caller has an established business relationship, or sent by a tax exempt nonprofit organization.

**Counsel:** **[*1]** For JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,, Plaintiff: ANTHONY PARONICH, PRO HAC VICE, PARONICH LAW, P.C., HINGHAM, MA; JEREMY C. JACKSON, Bower Law Associates, PLLC, State College, PA.

For CHILDRENS DENTAL HEALTH ASSOCIATES, LLC, Defendant: JILL HEATHER FERTEL, Cipriani & Werner, P.C., Three Valley Square, Blue Bell, PA; Sarah Adams, Blue Bell, PA.

**Judges:** MURPHY, J.

**Opinion by:** MURPHY

# Opinion

## MEMORANDUM

### MURPHY, J.

This is one of Jourey Newell's many federal cases brought under the *Telephone Consumer Protection Act*. Mr. Newell received two text messages from Children's Dental Health Associates asking if he wished to book an appointment for a named individual. According to Mr. Newell, he had never done business with the dental office nor contacted them for any purpose. And he had placed his phone number on the national Do Not Call registry. If a person elects to place their residential phone

number on the national Do Not Call registry, that preference must be honored. Under the TCPA, violations can amount to $500 per mode of contact or triple that if the violation was willful. Mr. Newell brings this class action claim under the TCPA and requests injunctive relief. And things begin with Children's **[*2]** Dental's motion to dismiss, which challenges Mr. Newell's standing to seek injunctive relief, and whether he can state a claim about text messages when the statute says "calls." These are familiar issues to courts. Because we find that unsolicited texts are governed by the TCPA, Mr. Newell's claim survives for now. But Mr. Newell's two isolated text messages are insufficient to state a claim for injunctive relief. For the following reasons, defendant's motion to dismiss is denied in part and granted in part.

## I. BACKGROUND

Plaintiff Jourey Newell received two unsolicited text messages from defendant Children's Dental Health Associates, LLC: one on May 6, 2025, and one on June 25, 2025. DI 1 at ¶ 21. Mr. Newell received these messages despite never being a customer, never inquiring about their services, and never providing consent to be contacted. *Id.* at ¶¶ 20, 23, 25. Mr. Newell had placed his residential telephone number on the national Do Not Call (DNC) registry on March 19, 2025, to avoid being contacted by businesses without his consent. *Id.* at ¶ 19. The complaint includes both messages as screenshots. *Id.* at ¶ 22. The first message from Children's Dental offered to "[b]ook an appt **[*3]** [sic] that fits your family's availability" with a link and signature identifying the sender as "Children's Dental Health — Downington" and continued, "[t]o unsubscribe, reply STOP." *Id.* Mr. Newell did not respond. The next message, sent seven weeks later from the same sender, identified a particular patient, stating "[m]ake Lailynn's smile shine bright this summer! Let's get your kiddo scheduled for a check-up . . ." and again included a link to book an appointment, identified themselves as Children's

Dental, and instructed how to unsubscribe from further communications. *Id.* The complaint does not say whether Mr. Newell is related to anyone named Lailynn. Mr. Newell responded to the second message by asking the sender to "[c]ease and desist all communications." *Id.* As pleaded, Mr. Newell did not receive any additional text messages from Children's Dental.

On September 11, 2025, Mr. Newell sued, seeking "injunctive relief and money damages." *Id.* at ¶ 38. Mr. Newell found the two messages to be "frustrating, obnoxious, annoying, were a nuisance and disturbed [his] solitude." *Id.* at ¶ 31. Mr. Newell believes that the same dental office has contacted numerous others in the same manner **[*4]** and "reasonably believes Class members number, at minimum, in the hundreds." *Id.* at ¶ 40.[1] Mr. Newell alleges that he and other similarly situated plaintiffs "were temporarily deprived of legitimate use of their phones because the phone line was tied up, and their privacy was improperly invaded. Furthermore, the calls unnecessarily used battery life, storage space, bandwidth, and wear and tear." *Id.* at ¶ 30. Throughout his complaint, Mr. Newell refers to the texts as "calls." *Id.* at ¶¶ 3-4, 25, 28-31, 51, 53-54.

## II. MOTION AT ISSUE

Children's Dental filed a motion to dismiss plaintiff's class action complaint, citing lack of standing for injunctive relief under *Rule 12(b)(1)* and failure to state a claim under *Rule 12(b)(6)*. DI 18. Children's Dental argues that Mr. Newell lacks standing for injunctive relief because he does not sufficiently plead that a future call or text message from Children's Dental is imminent or likely. DI 18-1 at 11-13. Children's Dental argues that the class action complaint should be dismissed because

the alleged text messages are not "calls" for the purposes of the TCPA. *Id.* at 2, 4-7. In the alternative, Children's Dental argues that even if texts were considered calls, the text messages **[*5]** are exempt from the TCPA because they are not advertisements or solicitations, but rather informative messages that fall under a healthcare exemption. *Id.* at 7-11. Additionally, defendant asks us to apply a narrow interpretation of "telephone solicitation" based on the content of the text messages, pursuant to the national DNC registry which is governed by *47 C.F.R. § 64.1200(c)(2)*. DI 18-1 at 10-11. Specifically, Children's Dental argues that the texts received by plaintiff were not for "the purpose of persuading [him] to pay for certain services," nor for "encourag[ing] a 'purchase.'" *Id.*

Mr. Newell filed a memorandum in opposition to Children's Dental's motion to dismiss. DI 21. In his opposition memo, Mr. Newell alleges that the text messages he received were "unsolicited marketing text messages" and "promotional advertisement[s]" to use Children's Dental's services. *Id.* at 7-8, 20-25. As pleaded, Mr. Newell was never a customer of and never inquired about the dental service, so the messages, he argues, were sent "to initiate a new commercial service relationship—not to confirm or remind him of any existing appointment." *Id.* at 25. Additionally, Mr. Newell added a new allegation that Children's Dental continued **[*6]** to send texts "after Plaintiff demanded that Defendant cease communications." *Id.* at 26. Children's Dental responded to Mr. Newell's opposition, reiterating its arguments that plaintiff failed to establish standing for injunctive relief; that texts are outside the scope of *§ 227(c)*; and, even if texts could be regulated within the bounds of the statute, plaintiff's claim fails because the messages were not solicitations. DI 22 at 1-8.

## III. STANDARD OF REVIEW

---

[1] Because plaintiff has not submitted a motion for class certification pursuant to *Rule 23*, we do not address the issue here. *See Fed. R. Civ. P. 23*.

**A. *Rule 12(b)(1)*: standing for injunctive relief**

*HN1* "A plaintiff bears the burden of establishing that he has Article III standing for each type of relief sought." *ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 301 (3d Cir. 2012)* (citing *Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009)*). To establish standing for injunctive relief, "a plaintiff must show: (1) that he is under a threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will prevent or redress the injury." *Id.* (citation modified) (citation omitted). "Even if the plaintiff has suffered a previous injury due to the defendant's conduct, the equitable remedy of an injunction is 'unavailable absent a showing **[*7]** of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]'" *Id.* (citing *City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)*) (other citation omitted). "Accordingly, a plaintiff may have standing to pursue damages, but lack standing to seek injunctive relief." *Id.* (citing *Lyons, 461 U.S. at 105*).

**B. *Rule 12(b)(6)*: failure to state a claim**

*HN2* When considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. at 678*. A court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [plaintiff]." *Phillips v. Cnty. of Allegheny, 515 F.3d*

*224, 228 (3d Cir. 2008)* (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (citation omitted).

**C. The Telephone Consumer Protection Act**

*HN3* The TCPA is a consumer protection statute that seeks to protect consumers from invasions of privacy from debt collectors, telemarketers, and spammers alike. *See* *47 U.S.C. § 227*. *Subsections 227(b)* and *(c)* provide private rights of action for violations of relevant federal regulations. **[*8]** *See* *47 U.S.C. §§ 227(b)(3)* and *(c)(5)*. Those regulations are prescribed and updated by the Federal Communications Commission (FCC). *See 47 C.F.R. § 64.1200*. Congress likewise authorized the FCC to create and maintain a national database of consumers who elect to register their residential phone numbers on the national Do Not Call (DNC) registry. *47 U.S.C. § 227(c)(3)*.

**IV. DISCUSSION**

**A. Plaintiff lacks standing to seek injunctive relief**

Mr. Newell alleges that he received two text messages, each on a different date. DI 1 at ¶ 21. Mr. Newell does not allege that Children's Dental continued to contact him after he requested that they "cease and desist all communications." *Id.* at ¶ 22. Mr. Newell later claimed in his opposition to defendant's motion to dismiss that Children's Dental "sent at least two solicitation texts within a 12-month period, including after Plaintiff demanded that Defendant cease communications." DI 21 at 26. However, Mr. Newell failed to include in his complaint that he was contacted by Children's Dental after asking them to stop contacting him. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a

motion to dismiss." *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988)* (citation omitted). Because Mr. Newell did not plead any factual basis to conclude **[*9]** that he is at risk of any "real or immediate threat that [he] will be wronged again" by another text message, his claim does not establish standing for injunctive relief. *Lyons, 461 U.S. at 111*. Accordingly, defendant's motion to dismiss the claim for injunctive relief is granted without prejudice.

### B. Plaintiff states a claim under *47 U.S.C. § 227(c)* and *47 C.F.R. § 64.1200(c)*

*HN4* The TCPA provides a private right of action for individuals who have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *47 U.S.C. § 227(c)(5)*. The relevant regulation, *47 C.F.R. § 64.1200(c)(2)*, bars "any telephone solicitation to [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" *Id.* An individual is entitled to "receive up to $500 in damages for each such violation" or treble damages if the violation was willful. *47 U.S.C. § 227(c)(5)(B)-(C)*. The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *47 U.S.C. § 227(a)(4)*.

For a claim to survive under this section, a plaintiff "must plead that (1) they **[*10]** receive[d] multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the [Do Not Call] List." *Camunas v. Nat'l Republican Senatorial Comm., 541 F. Supp. 3d 595, 604 (E.D. Pa. 2021)* (citation omitted).

Mr. Newell received two texts from defendants less than two months apart (on May 6, 2025, and June 25, 2025). DI 1 at ¶ 21. Both texts were from defendant ("Children's Dental Health — Downington"), who identified itself as such, and were sent from the same phone number. *Id.* at ¶ 22. Mr. Newell's phone that received the texts "is a residential telephone line . . . for consumers and is not assigned to a telephone exchange service for business." *Id.* at ¶ 17. Mr. Newell had placed his residential number on the national Do Not Call (DNC) registry in March 2025. *Id.* at ¶ 19. That checks most of the relevant boxes to state a claim. The remaining pertinent questions are (1) whether texts may be considered "calls" for the purposes of the statute and (2) if so, might the texts possibly be solicitations?[2] We answer affirmatively as to both inquiries.

### 1. A commonsense interpretation of the statutory text and purpose of the TCPA shows that texts should be considered calls

In *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.* **[*11]** , the Supreme Court held that *HN5* district courts are not "absolutely bound by the FCC's interpretation of the TCPA." *606 U.S. 146, 152, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*.[3] Instead, district courts "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id. at 155* (citation omitted); *Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 402, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*.

*HN6* "As in all cases of statutory interpretation, our

---

[2] We do not rule on whether the text messages were solicitations at the motion to dismiss stage, where plaintiff need only plead factual allegations that "raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*.

[3] *McLaughlin* concerned whether courts are bound by the FCC's interpretation of the TCPA in the context of pre-enforcement proceedings under the Hobbs Act. *606 U.S. 146, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*.

inquiry begins with the language of the statute[.]" *United States v. Abbott, 574 F.3d 203, 206 (3d Cir. 2009)* (citation omitted). The TCPA's stated intent is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *47 U.S.C. § 227(c)(1)*. It provides a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]" *Id.* at *§ 227(c)(5)*. **HN7** Congress authorized the FCC authority to "prescribe regulations to implement methods and procedures for protecting the privacy rights described[.]" *Id.* at *§ 227(c)(2)*. In doing so, Congress recognized that those regulations "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving **[*12]** telephone solicitations, and to make that compiled list and parts thereof available for purchase." *Id.* at *§ 227(c)(3)*. Those regulations also "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database[.]" *Id.* at *§ 227(c)(3)(F)*. The FCC determined such a database was necessary and enacted the national DNC registry in 2003.[4] Both the TCPA and the Federal Regulations define a "telephone solicitation" as "a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" *47 U.S.C. § 227(a)(4)*; *47 C.F.R. § 64.1200(f)(15)* (emphasis added).

### a. The plain meaning of the statute suggests that "call[s]" include text messages

Because the TCPA does not define a "call" anywhere in the statutory text, we first examine the plain meaning of the term as it was understood when the statute was enacted in 1991.[5] *Wisconsin Cent. Ltd v. United States, 585 U.S. 274, 284, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018)* (**HN8** "[I]t's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute." (citation modified) (citation omitted). The Ninth Circuit helpfully examined "the ordinary, contemporary, and **[*13]** common meaning of the verb 'to call,'" which has the same meaning today as it did in 1991: "to communicate with or try to get into communication with a person by a telephone." *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953-54 (9th Cir. 2009)* (citing Webster's Third New International Dictionary 318 (2002)); *see also Cole v. C/T Install America LLC, 2026 U.S. Dist. LEXIS 63254, at *1 n.1 (E.D. Pa. March 23, 2026)* (only available on Lexis) ("Based upon the definition of 'call' at the time of the TCPA's passage, there was no requirement that the communication via telephone be oral."); *Wilson v. Better Mortg. Corp., 811 F. Supp. 3d 631, 637 (S.D.N.Y. 2025)* ("the ordinary public meaning of 'telephone call' when the TCPA was enacted in 1991 was a communication made by telephone.") (citation omitted). We agree with these courts. Today, there are numerous modes of communicating by telephone; texting is just one such way "to communicate with or try to get into communication with a person by a telephone." *Satterfield, 569 F.3d*

---

[4] The 2003 order revised the TCPA and established the DNC registry with the Federal Trade Commission. *In Re Rules & Regulations Implementing the TCPA of 1991, 18 F.C.C. Rcd. 14014, 14017 (2003)*. *See also* **47 C.F.R. § 64.1200(c)(2)** ("No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]").

[5] Children's Dental points out that text messages did not exist in 1991 (when the TCPA was enacted). True enough, but that is not dispositive. When the Act was signed into law, its drafters could not have imagined any number of today's technological advancements. But courts do not give up in that sort of situation; rather, they interpret the language as best they can using all available tools. *See In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 284 (3d Cir. 2016)* ("[w]hen technological change has rendered literal terms ambiguous, [a law] must be construed in light of [its] basic purpose.") (citing *Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156, 95 S. Ct. 2040, 45 L. Ed. 2d 84 (1975)*).

*at 953-54*. Therefore, texting fits comfortably within the understood meaning of "call."

### b. The full picture of the statutory text also supports treating texts as a form of "call"

*HN9* The "interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning." *Essintial Enter. Sols. LLC v. United States SBA, 166 F.4th 380, 385 (3d Cir. 2026)* (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc., 580 U.S. 405, 414, 137 S. Ct. 1002, 197 L. Ed. 2d 354 (2017)*). In one of the TCPA's other subsections, *§ 227(b)*, Congress addressed the problem of robocalls **[\*14]** by placing "[r]estrictions on use of automated telephone equipment." *47 U.S.C. § 227(b)*. *Subsection (b)* prohibits "any person" from "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice" or "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]" *§ 227(b)(1)(A)*, *(B)*. Despite mentioning "calls" rather than "texts," courts have understood *§ 227(b)* to apply to text messages. In *Campbell-Ewald Co. v. Gomez*, the Supreme Court remarked that "it is undisputed" that a text message "qualifies as a 'call' within the compass of *§ 227(b)(1)(A)(iii)*." *577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)* (citation omitted). And the Third Circuit came to the same conclusion a few years before in *Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 269 n.2 (3d Cir. 2013)* ("The TCPA's prohibition on automated dialing applies to both voice calls and text messages.").[6]

We agree with courts in this district that have held consistently with the Supreme Court's remark in *Campbell-Ewald* to conclude that*HN10* the restrictions placed on "calls" also govern texts pursuant to both *§§ 227(b)* and *(c)*. *See Cole, 2026 U.S. Dist. LEXIS 63254, \*1 n.1* (finding that "nothing in the text, structure or purpose of the TCPA suggests the barring of text messages under *§ 227(c)*"); **[\*15]** *Shelton v. Pro. Source Lending Grp. LLC, 2025 U.S. Dist. LEXIS 46534, 2025 WL 817485, at \*4 n.4 (E.D. Pa. Mar. 14, 2025)* (concluding that "text messages are considered 'calls'" for the purposes of *§227(c)* and its implementing regulations);[7] *Perrong v. Chase Data Corp., 2024 U.S. Dist. LEXIS 14907, 2024 WL 329933, at \*2 (E.D. Pa. Jan. 26, 2024)* (holding that texts are calls for the purposes of *§§ 227(b)* and *(c)*); *King v. Bon Charge, 2025 U.S. Dist. LEXIS 267318, 2025 WL 3764039, at \*11 (D. Del. Dec. 30, 2025)* ("A text message counts as a 'call[]'" under *§ 227(c)*); *see also Newell v. RxLink Inc.*, No. 2:25-cv-4270 (E.D. Pa. Mar. 12, 2026) (*mem.*) (order denying defendant's motion to dismiss in another one of Mr. Newell's cases alleging he received unsolicited texts in violation of *§ 227(c)*). Not every district court sees it the same way, but our conclusion finds ample support here and around the country.[8]

---

TCPA a business is permitted to send one final text confirming that a consumer wishes to opt-out of receiving messages. *27 FCC Rcd. at 15394, ¶ 7*. *See also Satterfield, 569 F.3d at 952* ("[A] text message is a 'call' within the meaning of the TCPA.").

[7] For ease of reference, the *Shelton* Court chose to "address the 5 calls and 3 texts at issue as an aggregate of 8 calls." *Id.* So plaintiff is not alone referring to his two texts as "calls" throughout his complaint and response.

[8] *Alvarez v. Fiesta Nissan, Inc., 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930, at \*5 (S.D. Tex. Jan. 26, 2026)* ("A text message therefore falls reasonably within the literal language of [*§ 227(c)(5)*]."); *Wilson v. MEDVIDI Inc., 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at \*4 (N.D. Cal. Oct. 7, 2025)* (same); *Mey v. Liberty Home Guard, LLC, 2026 U.S. Dist. LEXIS 739, at \*15-18 (N.D.W. Va. Jan. 5, 2026)* (same) (collecting cases) (only available on Lexis); *Bosley v. A Bradley Hosp. LLC, 2025 U.S. Dist. LEXIS 183986, 2025 WL 2686984, at \*5 (S.D. Fla. Sept. 19, 2025)*

---

[6] *Gager* cited to both *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc., 27 FCC Rcd. 15391 (2012)* (*SoundBite*), and *Satterfield, 569 F.3d at 952*, in support of the notion that the TCPA's prohibition on autodialers applies to both voice calls and text messages. *Gager, 727 F.3d at 269 n.2*. *SoundBite* was a Declaratory Ruling in which the FCC held that under the

Defendant urges us to rely on the thoughtful opinions in *Davis v. CVS Pharmacy, Inc., 797 F. Supp. 3d 1270 (N.D. Fla. 2025)*, and *Jones v. Blackstone, 792 F. Supp. 3d 894 (C.D. Ill. 2025)*. But we are not persuaded. *Davis* focused on modern parlance rather than considering the broader meaning of a "telephone call" at the time the statute was enacted in 1991, as we think is appropriate. *797 F. Supp. 3d at 1273* ("no ordinary person would think of a text message as a '*telephone* call.'") (emphasis in original). Similarly, *Jones* acknowledged that "[t]ext messaging was not an available technology in 1991," but then focused the analysis on "today's American parlance," concluding that "'telephone call' means something entirely different from 'text message.'" *792 F. Supp. 3d at 899*. We disagree and think the more expansive view of "call" follows from **[*16]** correctly focusing on 1991.[9] As the Supreme Court has often held, we should "interpret[] a statute in accord with the ordinary public meaning of its terms *at the time of its enactment*." *Bostock v. Clayton Cnty., Georgia, 590 U.S. 644, 654, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)* (emphasis added); *see also Wis. Cent., 585 U.S. at 284*; *Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979)*.

---

("a text message constitutes a 'call' under the TCPA"); *Hudson v. Palm Beach Tan, Inc., 2024 U.S. Dist. LEXIS 165676, 2024 WL 4190513, at *7-8 (M.D.N.C. Aug. 12, 2024)*, *report and recommendation adopted*, *2024 U.S. Dist. LEXIS 164763, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024)* (same); *Williams v. Myler Disability, LLC, 2020 U.S. Dist. LEXIS 211914, 2020 WL 6693134, at *5 (W.D.N.C. November 12, 2020)* (same).

[9] We likewise find unpersuasive the supplemental authority submitted by defendant, which consists of four additional district court decisions from other jurisdictions. DI 24 at 1-5 (discussing *Radvansky v. 1-800-Flowers.com, Inc., 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026)*, *Stockdale v. Skymount Prop. Group, LLC, 2026 U.S. Dist. LEXIS 42954, 2026 WL 591842 (N.D. Oh. Mar. 3, 2026)*, *Richards v. Fashion Nova, LLC, 2026 U.S. Dist. LEXIS 65696, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026)*, and *Richards v. Shein Distrib. Corp., 2026 U.S. Dist. LEXIS 65697, 2026 WL 847584 (S.D. Ind. Mar. 26, 2026)*). As explained in this memorandum, we find that the broader reading of "call" is the better view.

Children's Dental also points to a 2018 amendment to the TCPA, where Congress added specific "text message" language to *§ 227(e)* but not to *§§ 227(c)* or *(b)*. DI 22 at 3. According to Children's Dental, this confirms that Congress did not mean for *§§ 227(c)* or *(b)* to include texts. *Id.* We disagree, and it starts right in the language of the subsection. *Section 227(e)* is titled "Prohibition on provision of misleading or inaccurate caller identification information" and reads: "[i]t shall be unlawful for any person . . . in connection with any voice service or text messaging service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information[.]" *47 U.S.C. § 227(e)*. Congress expressly addresses its concerns about "*caller* identification information" to both "voice" and "text" services. *Id.* (emphasis added). Thus, the face of *§ 227(e)* further confirms our view that a "call" can implicate a voice conversation or a text conversation.

Holding, as Children's Dental urges, that "telephone **[*17]** calls" encompasses texts under some subsections, but not others, would yield potentially absurd inconsistencies. The statute nowhere appears to suggest that consumers should lack a private right of action to address unsolicited marketing text messages after registering for the DNC registry. And that result would cut directly against express guidance provided by the FCC. *HN11* "Statutory interpretations 'which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.'" *First Merchants Acceptance Corp. v. J.C. Bradford & Co., 198 F.3d 394, 402 (3d Cir. 1999)* (citing *Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982)*). Accordingly, we agree with the district court in *Wilson*, that "[l]imiting *§ 227(c)*'s reach to telephone voice calls while *§ 227(b)* [and *§ 227(e)*] cover[] voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure." *811 F. Supp. 3d at 641*.

Contrary to Children's Dental's proposal, it is considerably more likely that the 2018 amendment reflects an understanding that the "telephone call" language in subsections (b) and (c) includes texts and remains inclusive of other ways that telephone users reach out and communicate with each other. *See Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998)* ("As we have said before, the fact that a statute can be applied in situations not expressly anticipated **[*18]** by Congress does not demonstrate ambiguity. It demonstrates breadth." (citation modified) (citation omitted). *See also In re Nickelodeon, 827 F.3d at 287* (When Congress "empower[s] an administrative agency to augment the definition of [a term] in light of changing circumstances or new technologies[,]" it is a way of "buil[ding] flexibility into the statute to keep pace with evolving technology.").

### c. The TCPA's purpose as a consumer protection statute is consistent with treating texts as calls

Understanding calls to include texts under the TCPA is consistent with the statute's stated purpose: a consumer protection law designed to protect individuals' privacy. *47 U.S.C. § 227(c)(1)*. "Congress enacted the TCPA in an effort to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *18 F.C.C. Rcd. at 14018, ¶ 4*;[10] *see also Mims v. Arrow Financial Services, LLC, 565*

U.S. 368, 372, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012) (describing the Act's purpose). Those unsolicited communications, whatever form they may take, "are not distinguishable in terms of being an invasion of privacy." *Satterfield, 569 F.3d at 954*; *see also Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 88 (2d Cir. 2019)* ("the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA."); *Daubert v. NRA Grp., LLC, 861 F.3d 382, 390 (3d Cir. 2017)* ("Turning to the TCPA's **[*19]** purpose we reiterate that the statute is remedial in nature and should be construed to benefit consumers.") (citation modified) (citation omitted). "[I]t strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones." *Wilson, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3*. Congress authorized the Federal Communications Commission (FCC) to prescribe regulations.

Mr. Newell asks us to adopt the FCC's interpretation of the TCPA — that it applies broadly to texts. DI 21 at 18-20. Children's Dental argues that the FCC is incorrect, urging us to set aside its interpretations as we are authorized to do under *McLaughlin*. DI 18-1 at 5 (citing *McLaughlin, 606 U.S. 146*). We find no reason to disagree with the FCC's persuasive reading of the TCPA — a reading with which, as this memorandum highlights, several courts across the country also have agreed. Moreover, Congress entrusted the FCC with an active role in the TCPA's enforcement[11] and with the authority to prescribe regulations as codified in *§§ 227(b)(2)*, *(c)(2)*, *(d)(2)-(3)*, and *(e)(3)*. *Newell v. JR Capital, LLC, 791 F. Supp. 3d 571, 576 (E.D. Pa. 2025)*. The FCC has broad discretion under the statute,

---

[10] When the FCC seeks to amend a federal rule or explain a decision not to amend, its formal decision is written in a Report & Order (R&O). The FCC issues the R&O after providing opportunities for the public to ask questions and comment on the topic. The FCC Record (cited as Rcd.) is the commission's official publication of decisions like R&O's and accompanying documents. When a rule is finalized, that rule along with any explanations are then published in the Federal Register (FR). A deeper look into the FCC's process for drafting R&Os is available here: https://www.fcc.gov/general/understanding-fcc-processes (last accessed April 2, 2026).

[11] Even in a non-private action, if "a legal officer of a State" or other authorized official brings an action on behalf of that State's residents, the FCC has the authority "to intervene in the action," "to be heard on all matters arising therein," and "to file petitions for appeal." *47 U.S.C. § 227(e)(6)(C)*.

including "ample flexibility to exclude robocalls from TCPA's scope through the administrative process." *Perrong v. Bradford, 157 F.4th 251, 258 (3d Cir. 2025)*; *47 U.S.C. § 227(b)(2)(B)-(C)*.[12] This discretion appears entirely consistent **[\*20]** with the need to address ever-changing technologies while also protecting legitimate business interests.[13]

The FCC has explicitly stated that "under the TCPA, it is unlawful to make any call" in violation of its subsections. *18 F.C.C. Rcd. at 14115*. "This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]" *Id.*[14] More recently, the FCC reaffirmed that text messages should be regulated under the DNC registry just the same as telephone calls:

> The Commission adopts the proposal to codify the National DNC Registry's existing protections to text messages. Texters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry. The Commission previously concluded that the national database should allow for the registration of wireless telephone numbers and that such action will further the objectives of the TCPA and the Do-Not-Call Act. The Commission's action is consistent with Federal

court opinions and will both deter illegal texts and make DNC enforcement easier.

*Targeting and Eliminating Unlawful Text Messages, Implementation of the TCPA of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls, 89 FR 5098-1, 5099, ¶ 6 (2024)*. Thus, while we are not bound by nor deferential to the FCC's interpretation of the TCPA,[15] we **[\*21]** find its interpretation amply supported by the statute's text and purpose, as well as by the reasoning of numerous courts that have tackled this interpretive question.

## 2. The text messages are "solicitations" sufficient to survive dismissal

**HN12** A telephone solicitation is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" *47 U.S.C. § 227(a)(4)*. Excluded from that definition are "call[s] or message[s]" sent with the receiver's "prior express invitation or permission," sent "to any person with whom the caller has an established business relationship," or sent by "a tax exempt nonprofit organization." *Id.*

Children's Dental argues that the messages it allegedly sent to Mr. Newell were not solicitations because they were meant to persuade him to "use" its dental services rather than "pay" for those services. DI 22 at 5. Perhaps if Children's Dental offered free services, as was the case in *Hulce v. Zipongo Inc.*, then it would not be so clear that the text messages were solicitations encouraging the purchase of a service. *132 F.4th 493, 500-01 (7th*

---

[12] "And this flexibility was central to the successful passage of the Act." *Perrong, 157 F.4th at 258* (citing *Statement on Signing the Telephone Consumer Protection Act of 1991*, 27 Weekly Comp. Pres. Doc. 1877 (Dec. 20, 1991) ("I have signed the bill because it gives the Federal Communications Commission ample authority[.]")).

[13] "The Commission recognizes that telemarketing is a legitimate method of selling goods and services, and that many consumers value the savings and convenience it provides." *Implementing the TCPA of 1991, 18 F.C.C. Rcd. at 14018, ¶ 3*.

[14] The FCC explained that SMS "provides the ability for users to send and receive text messages[.]" *18 F.C.C. Rcd. at 14115, ¶ 165 n.606* (citing *Section 6002(B) of the Omnibus Budget Reconciliation Act of 1993*, *17 F.C.C. Rcd 12985, 13051 (2002)*).

[15] *Loper Bright, 603 U.S. at 392* (holding that "agency interpretations of statutes . . . are not entitled to deference" and that courts must "decide whether the law means what the agency says.") (citation omitted); *McLaughlin, 606 U.S. at 152* (explaining the district court is not "absolutely bound by the FCC's interpretation of the TCPA" and that it "should interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation").

Cir. 2025) (Affirming summary judgment for defendant who contacted plaintiff about "free services available [*22] through his state and Medicaid funded healthcare plan."). But nothing in the record (nor in the arguments by Children's Dental) indicates that the services promoted by Children's Dental in its texts to Mr. Newell would be free of charge. We thus find it plausible, at the pleading stage, that these texts were intended to persuade Mr. Newell to pay for defendant's services — not merely to use them.

Children's Dental further argues that those messages were sent to inform a patient of an upcoming appointment and that "a prior relationship" is fairly evident from the texts themselves because the texts addressed a named individual. DI 22 at 6. But the mere provision of a name in a call or message does not end all inquiry into whether a prior relationship existed. *See Wilson v. Skopos Financial, LLC, 2025 U.S. Dist. LEXIS 138638, 2025 WL 2029274, at *3 (D. Or. July 21, 2025)* (denying defendant's motion to dismiss and inferring that texts sent to the wrong name were "pretext" to form a commercial relationship).

From the facts alleged, which we must consider as true at this time, Mr. Newell stated he has no prior relationship with Children's Dental, has never been a patient, nor even inquired about Children's Dental's services. Determining whether a regulatory exception applies at this stage is therefore [*23] premature. "With some preliminary discovery, the true purpose and intended recipient of the text messages will be better evaluated." *Wilson, 2025 U.S. Dist. LEXIS 138638, 2025 WL 2029274, at *3.*

## V. CONCLUSION

"Experience teaches that a statute's fixed meaning is not obvious in every instance. For example, questions can pop up about the meaning of statutory text when 'new *applications* . . . arise in light of changes in the world.'" *Essintial, 166 F.4th*

at 384 (citing *Wis. Cent., 585 U.S. at 284*) (emphasis in original). This is certainly true in the field of telecommunications, where laws inevitably survive through generations of new technology. We agree with the FCC and many courts that have considered the question that the statutory language "calls" includes text messages. And having resolved the other sufficiency questions, we conclude that the plaintiff stated a claim, other than his request for injunctive relief. Defendant's motion to dismiss is granted in part and denied in part. An appropriate order accompanies this memorandum.

## ORDER

**AND NOW**, this 6th day of April 2026, upon considering defendant's motion to dismiss (DI 18), plaintiff's opposition (DI 21), defendant' reply (DI 22), plaintiff's notice of supplemental authority (DI 23), defendant's notice of supplemental authority (DI 24), and [*24] for reasons in the accompanying memorandum, it is **ORDERED** defendant's motion to dismiss (DI 18) is **GRANTED in part** and **DENIED in part**. The case may proceed, but we agree that plaintiff has not stated a claim for injunctive relief.

/s/ Murphy

**MURPHY, J.**

---

**End of Document**

# *Cole v. C/T Install Am., LLC*

United States District Court for the Eastern District of Pennsylvania

March 23, 2026, Filed

CIVIL ACTION NO. 25-3531

### Reporter

2026 U.S. Dist. LEXIS 63254 *; 2026 LX 152253

VIRGINIA COLE, on behalf of herself and others similarly situated, v. C/T INSTALL AMERICA, LLC

**Counsel:  [*1]** For Virginia Cole, on behalf of herself and others similarly situated, Plaintiff: ANTHONY PARONICH, PARONICH LAW, P.C., Hingham, MA USA; Jeremy C. Jackson, Bower Law Associates, PLLC, State College, PA USA.

For C/T INSTALL AMERICA, LLC, Defendant: ANDREW W. MUIR, Law Office of Andrew W Muir LLC, Wyomissing, PA USA; JAMES B. SAYLOR, KELLEY DRYE & WARREN LLP., New York, NY USA; Steven W Schlesinger, Kelley Drye & Warren LLP, New York, NY USA.

**Judges:** CATHERINE HENRY, J.

**Opinion by:** CATHERINE HENRY

# Opinion

### ORDER

**AND NOW**, this 23rd day of March 2026, upon review of the Motion to Dismiss of Defendant, C/T Install America, LLC, Plaintiff's opposition thereto and Defendant's reply, as well as all supplemental authority provided by the parties, it is hereby **ORDERED** as follows:

    1. The Motion to Dismiss of Defendant, C/T Install America, LLC, (ECF No. 10) is

**DENIED**[1].

---

[1] Defendant, C/T Install America, LLC, filed a motion to dismiss in this matter, claiming that this putative class action brought under the *Telephone Consumer Protection Act, 47 U.S.C. §§ 227 et seq.* ("TCPA") should be dismissed for failing to state a claim. Plaintiff's Complaint asserts that Defendant violated the Do Not Call ("DNC") requirements of the TCPA by sending two text messages to her cell phone concerning window installation services. Defendant moved to dismiss, claiming: 1) Plaintiff's TCPA claim must fail because Plaintiff is not a "residential telephone subscriber;" 2) Plaintiff's TCPA claim must fail because the plain language of *Section 227(c) of the TCPA* does not regulate text messages; and 3) Plaintiff has failed to sufficiently allege a "willful" or "knowing" violation of the TCPA that would entitle her to an award of treble damages. ECF No. 11-1, Def's Memorandum in Support ("Memo") at 1-2. After a thorough review of the briefs of the parties, I find that Plaintiff sufficiently pled that she is a residential telephone subscriber, that *Section 227(c) of the TCPA* does in fact regulate text messages, and that Plaintiff sufficiently pled that Defendant committed a willful or knowing violation of the TCPA. Accordingly, Defendant's motion will be denied.

The TCPA was passed by Congress in 1991 to address consumer privacy concerns related to telemarketing. In drafting the TCPA, Congress "enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime" administered by the Federal Communications **[*2]** Commission. *Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 383, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012)*. The TCPA authorized the creation of a nationwide Do Not Call registry and directed the FCC to establish a "list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *47 U.S.C. § 227(c)(3)*, and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on the list. *Id.*, *§ 227(c)(3)(F)*. *Section 227(c)* provides a private right of action for persons who have received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations." *47 U.S.C. § 227(c)(5)*. The regulations further provide that "[n]o person or entity shall initiate any telephone solicitation to [a] residential telephone subscriber who has registered his or her telephone number on the [DNC registry]." ***47 C.F.R. § 64.1200(c)(2)***.

Cole v. C/T Install Am., LLC

In the instant matter, Plaintiff alleges that her cell phone number was registered to the DNC list, and therefore, the marketing texts that she received from Defendant were violations of the TCPA. Defendant argues that Plaintiff's claim must fail because she received text messages on her cell phone, which is not a residential phone, so she is not a "residential telephone subscriber." Defendant also argues that the text of the TCPA only permits recovery for "telephone calls" to a phone number on the DNC list, not text messages.

First, as to Defendant's argument that Plaintiff is not a "residential telephone subscriber" because the messages in question were sent to her cell phone, I find this argument to be unavailing. Plaintiff's Complaint stated that she uses the phone in question as her "personal residential telephone number," and "does not use, and at no time used, [the phone] for business or commercial purposes." ECF No. 1, Complaint at ¶¶ 9-10. Further, Defendant makes no allegation that Plaintiff's phone is used for business purposes. Consistent with numerous courts who have addressed this issue, I find that a "residential subscriber" is not limited to a residential landline but rather can include a person who uses a cell phone for personal use. *See Isaacs v. USHEALTH Advisors, LLC, No. 24-216, 2025 U.S. Dist. LEXIS 152625, 2025 WL 2268359, at *3 (N.D. Ga. Aug. 7, 2025); Harriel v. Bealls, Inc., No. 25-1165, 2025 U.S. Dist. LEXIS 158157, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); Wilson v. Hard Eight Nutrition, LLC, 804 F.Supp.3d 1141,1151 (D. Ore. June 24, 2025); Loudermilk v. Maelys Cosmetics USA, Inc., No. 24-1866, 2025 U.S. Dist. LEXIS 256097, 2025 WL 3625779, at *3 (N.D. Ga. Dec. 11, 2025); Showers v. Pelican Inv. Holdings Group, LLC, No. 23-2864, 2026 U.S. Dist. LEXIS 20276, 2026 WL 251730, at *6 (S.D. Ill. Jan. 30, 2026).* But see Moore v. Triumph CSR Acquisition, LLC, No. 23-4659, 2023 U.S. Dist. LEXIS 220876, 2023 WL 8601528, at *2-3 (N.D. Ill. Dec. 12, 2023)* (finding that a cell phone is not a residential phone).

Next, Defendant argues that *§ 227(c) of the TCPA* does not apply to text messages, as the text of *§ 227(c)* provides relief only to an individual who has received "more than one **telephone call** within any 12-month period," as opposed to a text message. 42 U.S.C. § 227(c)(5) (emphasis added). I note that at the time the TCPA was enacted in 1991, text messages did not yet exist, so Congress could not have specifically included text messages in the language of § 227(c). *See Keating v. Peterson's Nelnet, LLC, 615 F.App'x 365, 370 (6th Cir. 2015)* ("[T]he first text message was not sent until December 3, 1992. . .") However, in 2003 as part of its responsibility to administer the TCPA, the **[*3]** FCC issued regulations directing that the TCPA should be applied to text messages. See *In re Rules & Regs. Implementing the TCPA, 18 FCC Rcd. 14014, 14115 (2003).* ("[The TCPA] encompasses both voice calls and text calls to wireless numbers . . ."); *47 C.F.R. § 64.1200(e)* (applying that ruling to the do-not-call restriction in *§ 64.1200(c)*). Despite this guidance from the FCC, Defendant argues that the plain language of § 227(c) does not specifically regulate text messages and that texts are therefore excluded from protection under this section of the TCPA. Memo at 2. Accordingly, I must determine whether the phrase "telephone call" as used in § 227(c) includes text messages.

Initially, I note that prior to the Supreme Court's recent decisions in *Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*, and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*, I was required to defer to the FCC's decision that a text message should be treated as a "telephone call" under the TCPA. See *Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)*. This doctrine, called *Chevron* deference, was eliminated by the Supreme Court in *Loper Bright*, where the Court expressly overruled *Chevron* and stated that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright, 603 U.S. at 412*. The next year, in *McLaughlin Chiropractic*, the Court stated that courts must "determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin Chiropractic, 606 U.S. at 155*.

In performing this statutory interpretation of the TCPA, I first examine the text of the TCPA itself, interpreting the words of the statute with their "ordinary, contemporary, common meaning." *Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979)*. As discussed previously, § 227(c)(5) does not specifically include text messages, so I must interpret the plain meaning of the phrase "telephone call" as used in that section. I note that Webster's Dictionary from **[*4]** the time of the TCPA's passage in 1991 defines "call" in this context as "to get or try to get into communication by telephone." *Alvarez v. Fiesta Nissan, Inc., No. 25-343, 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930, at *4 (S.D. Tex. Jan. 26, 2026)* (citing Webster's Ninth New Collegiate Dictionary 197 (1990)). A text message is sent via telephone in an attempt to communicate with another person. Based upon the definition of "call" at the time of the TCPA's passage, there was no requirement that the communication via telephone be oral. Therefore, I find that a text message falls under this definition of a "call" as set forth in § 227(c)(5), and my analysis could very well end there. However, for the sake of completeness, I will continue with the remainder of the statutory analysis.

Continuing on to examine the structure of the TCPA as a whole, I note that the Supreme Court as well as other courts have found that "calls" under § 227(b), a neighboring section of the TCPA, include text messages. *Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*. I also note that both §§ 227(b) and 227(c) use the same term - "telephone call." (§ 227(b) prohibits the initiation of "any **telephone call** to any residential telephone line" using an automated telephone system and § 227(c) protects a person who "receives more than one **telephone call** over a 12-month period.") As with other courts who examined the structure of the TCPA, I find that it is "strongly persuasive. . . [that] a subsection of the same statute uses identical language," *Alvarez, 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930 at *6*. "The fact that the term 'call' as used in § 227(b) encompasses 'text messages,'

Cole v. C/T Install Am., LLC

supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid v. Newity, LLC, No. 25-8012, 2025 U.S. Dist. LEXIS 221088, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025)*. As further support, § 227(c) prohibits sending "telephone solicitations" to numbers on the DNC list, and the TCPA defines "telephone solicitations" as "the initiation of a telephone call or **message** for the purpose of encouraging the purchase or rental of . . . goods, or services, which is transmitted to any person." *47 U.S.C. § 227(a)(4)* (emphasis added). The structure of the entire TCPA leads to the conclusion that *§ 227(c)* does include text messages.

In examining the purpose of the TCPA, I again find that it leads to the conclusion that "call" as used in *§ 227(c)* includes text messages. "The TCPA was enacted to 'protect the **[\*5]** privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. June 19, 2009)*. Given Congress's expressly stated goal "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," *47 U.S.C. § 227(c)(1)*, "it strains belief to suggest that Congress silently determined that [ ] oral messages were more invasive or objectionable than written ones." *Wilson v. MEDVIDI Inc., No. 25-3996, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025)*. Congress intended the TCPA to protect the privacy of consumers from unsolicited marketing efforts, and a text message can be just as invasive as a phone call.

Lastly, I find that interpreting *§ 227(c)* to include text messages is consistent with both the previously discussed guidance from the FCC, as well as numerous decisions from other courts on this same issue. *See Mujahid, 2025 U.S. Dist. LEXIS 221088, 2025 WL 3140725, at *2*; *Alvarez, 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930, at *4*; *Wilson v. MEDVIDI Inc., 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3*. *Wilson v. Better Mortg. Corp., No. 25-5503, 2025 U.S. Dist. LEXIS 251694, 2025 WL 3493815 (S.D.N.Y Dec. 5, 2025)*; *Mey v. Liberty Home Guard, LLC, No. 23-281, 2026 U.S. Dist. LEXIS 739, 2026 WL 486556 (N.D. WV, Jan. 5, 2026)*. *But see Jones v. Blackstone Med. Servs., LLC, 792 F.Supp.3d 894, 899 (C.D. Ill. July 21, 2025)* (finding that *Section 227(c)* does not apply to text messages based on a plain reading of the TCPA and its implementing regulations); *Davis v. CVS Pharmacy, Inc., 797 F.Supp.3d 1270, 1273 (N.D. Fla. Aug. 26, 2025)* (finding that the text of *§ 227(c)* was clear and a text message was not a telephone call.); *Sayed v. Naturopathica Holistic Health, Inc., No. 25-847, 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025)* (finding that *Section 227(c)* does not apply because "a text message is not a telephone call"); *Dilanyan v. Hugo Boss Fashions, Inc., No. 25-5093, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at *1 (C.D. Cal. Dec. 3, 2025)* (stating that the Court "reads the ordinary meaning of 'telephone call' to exclude 'text message,'" and finding that *Section 227(c)* does not apply); **[\*6]** *Radvansky et al. v. 1-800-Flowers.com, Inc., No. 25-2811, 2026 U.S.*

2. C/T Install America, LLC, shall file an Answer to Plaintiff's Complaint within 20 days.

**BY THE COURT**:

/s/ Catherine Henry

**CATHERINE HENRY, J.**

---

**End of Document**

*Dist. LEXIS 32415, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026)* (stating that the "statutory text here is clear that only telephone calls are actionable under *§ 227(c)(5)*, not text messages."). I recognize that some courts have analyzed this issue and come to a different conclusion, but my interpretation is consistent with the weight of authority. Accordingly, I find that nothing in the text, structure or purpose of the TCPA suggests the barring of text messages under *§ 227(c)* as proposed by Defendant, and I conclude that *§ 227(c)* includes text messages within its definition of a "telephone call."

As to the last issue argued by Defendant, I find that Plaintiff's Complaint sufficiently pleads a claim of "willful or knowing" violations of the TCPA so as to sustain a claim for treble damages at this stage of the case. Therefore, Defendant's motion will be denied.