**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>   Plaintiff<br><br>vs.<br><br>LINE 5, LLC,<br><br>   Defendant. | Case No. 26-cv-155 |

**<u>PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD .................................................................................................. 2

III. ARGUMENT .............................................................................................................. 3

   A. Abramson Revoked His Consent, and Third Circuit Law Permits him to do so.......... 3

      1. Consent under the TCPA is revocable. ................................................................. 3

      2. Abramson revoked his consent, using the method Line 5 gave him. ...................... 3

      3. Line 5 asks the Court to follow two out-of-circuit decisions it has already declined to follow. ............................................................................................................ 4

   B. Count II Rests on Prerecorded Voice Calls, and Text Messages Are Also "Calls." ..... 7

      1. Text messages are calls. ...................................................................................... 7

      2. The Statutory Text and the FCC's Longstanding Interpretation Confirm That Text Messages Are "Calls.".................................................................................... 7

      3. The Third Circuit Court of Appeals and the other Federal Courts in Pennsylvania and elsewhere in the Third Circuit that have considered this question, including multiple courts in the last few months, got it right. ........................................ 12

      4. Steidinger does not bind this Court and should not persuade it. ........................... 18

   C. The Established Business Relationship Exception Does Not Apply to Count II. ......... 19

   D. Whether the Communications Were Marketing Is a Question of Fact and the Plaintiff has Pled that they Are........................................................................................ 20

   E. The Amended Complaint Satisfies Rule 8........................................................................ 21

IV. CONCLUSION ......................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*ACA Int'l v. FCC*,

885 F.3d 687 (D.C. Cir. 2018) .................................................................................................... 4

*Allen v. First National Bank of Omaha*,

No. 3:18-CV-1216 (M.D. Pa. June 28, 2021) ........................................................................ 1, 4

*Alvarez v. Fiesta Nissan, Inc.*

2026 U.S. Dist. LEXIS 14155, 2026 WL 202930 ..................................................................... 13

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) .................................................................................................................... 2

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*,

708 F.3d 737 (6th Cir. 2013) ...................................................................................................... 8

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007) .................................................................................................................... 2

*Bradshaw v. CHW Group, Inc.*,

763 F. Supp. 3d 641 (D.N.J. 2025) ........................................................................................... 15

*Campbell-Ewald Co. v. Gomez*,

577 U.S. 153 (2016) .................................................................................................................. 12

*Champion v. Credit Pros Int'l Corp.*,

No. 21-10814, 2025 WL 3452354 (D.N.J. May 15, 2023) ....................................................... 15

*Cole v. C/T Install Am., LLC*,

    No. 25-3531, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026)............................. 12, 14

*Daubert v. NRA Group, LLC*,

    861 F.3d 382 (3d Cir. 2017)................................................................................................ 5

*Davis v. CVS Pharmacy, Inc.*,

    797 F.Supp.3d 1270 (N.D. Fla. Aug. 26, 2025).......................................................... 13

*Dilanyan v. Hugo Boss Fashions, Inc.*,

    No. 25-5093, 2025 WL 3549868 (C.D. Cal. Dec. 3, 2025)...................................... 14

*Dominguez v. Yahoo, Inc.*,

    894 F.3d 116 (3d Cir. 2018)............................................................................................ 12

*Erickson v. Pardus*,

    551 U.S. 89 (2007)............................................................................................................. 2

*Esquivel v. Mona Lee, Inc.*,

    2025 WL 3275607 (S.D. Cal. 2025)........................................................................... 11

*Franklin v. Navient Corp.*,

    No. 17-1640-RGA, 2019 WL 4222681 (D. Del. Sept. 5, 2019)............................ 5, 6

*Fridline v. Millennia Tax Relief, LLC*,

    727 F. Supp. 3d 517 (M.D. Pa. 2024) ....................................................................... 2, 21

*Gager v. Dell Financial Services, LLC*,

    727 F.3d 265 (3d Cir. 2013)............................................................ 1, 3, 4, 5, 6, 10, 12

*Howard v. Republican Nat'l Comm.*,

    164 F.4th 1119 (9th Cir. 2026) ..................................................................................... 7, 17

*Hulce v. Zipongo Inc.*,

132 F.4th 497 n.1 ................................................................................................................... 9

*Jackson v. Direct Building Supplies, LLC*,

No. 4:23-cv-01569, 2024 U.S. Dist. LEXIS 8811 (M.D. Pa. Jan. 17, 2024) ........................... 11

*Jones v. Blackstone Med. Servs., LLC*,

792 F.Supp.3d 894 (C.D. Ill. July 21, 2025) ........................................................................ 13

*Loper Bright Enterprises v. Raimondo*

603 U.S. 369 (2024) .............................................................................. 8, 9, 10, 11, 16

*Lozano v. Twentieth Century Fox Film Corp.*

702 F. Supp. 2d 1007 ............................................................................................................. 8

*McBride v. Ally Fin., Inc.*,

No. 15-867, 2017 WL 3873615 (W.D. Pa. Sept. 5, 2017) ....................................................... 5

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,

606 U.S. 146 (2025) ......................................................................................................... 9, 16

*Medley v. Dish Network, LLC*,

958 F.3d 1063 (11th Cir. 2020) ......................................................................................... 4, 6

*Mey v. Liberty Home Guard, LLC*,

No. 5:23-CV-281, 2026 WL 486556 (N.D.W. Va. Jan. 5, 2026) ....................................... 8, 13

*Mujahid v. Newity, LLC*,

No. 25-8012, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) .................................................. 13

*Newell v. Children's Dental Health Assocs., LLC*,

No. 25-5238, 2026 U.S. Dist. LEXIS 74360 (E.D. Pa. Apr. 6, 2026) ............................... 12, 20

*Newell v. RxLink Inc.*,

    Civil Action No. 2:25-cv-4270, ECF No. 43 (E.D. Pa. Mar. 12, 2026) .................................. 14

*Ordonez v. Yost*,

    289 F. App'x 553 (3d Cir. 2008) .................................................................................... 4, 21

*Pariseau v. Built USA, LLC*,

    619 F. Supp. 3d 1203 (M.D. Fla. 2022)................................................................................ 15

*Pero v. Brown-Daub Chevrolet of Nazareth*,

    No. 25-7016, 2026 U.S. Dist. LEXIS 134498 (E.D. Pa. June 17, 2026)............................ 12, 16

*Perrin v. United States*,

    444 U.S. 37 (1979).................................................................................................................. 7

*Pickens v. Hamilton-Ryker IT Sols., LLC*,

    133 F.4th 575 (6th Cir. 2025) ................................................................................................ 9

*Radvansky v. 1-800-Flowers.com, Inc.*,

    No. 25-2811, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026)..... 14

*Reyes v. Lincoln Automotive Financial Services*,

    861 F.3d 51 (2d Cir. 2017)............................................................................................. 4, 5, 6

*Rubin v. Staples, Inc.*,

    No. 2:25-45515, 2026 U.S. Dist. LEXIS 70359 (D.N.J. Mar. 31, 2026) ........................... 12, 14

*Sagar v. Kelly Auto. Grp., Inc.*,

    No. 21 Civ. 10540, 2021 WL 5567408 (D. Mass. 2021)......................................................... 8

*Satterfield v. Simon & Schuster, Inc.*,

    569 F.3d 946 (9th Cir. 2009) ............................................................................ 7, 8, 10, 12, 13

*Sayed v. Naturopathica Holistic Health, Inc.*,

No. 25-847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ........................................................ 13

*Schaevitz v. Braman Hyundai, Inc.*,

437 F. Supp. 3d 1237 (S.D. Fla. 2019) ................................................................................ 8

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,

605 U.S. 168 (2025) ............................................................................................................ 10

*Skidmore v. Swift & Co.*,

323 U.S. 134 (1944) ............................................................................................................ 11

*Wilson v. Skopos Financial, LLC.*,

2025 WL 2029274 ........................................................................................................ 8, 10

*Steidinger v. Blackstone Medical Services*,

No. 25-2398, 2026 U.S. App. LEXIS 20613 (7th Cir. July 14, 2026) .............................. 17, 18

*U.S. Telecom Ass'n v. FCC*,

825 F.3d 674 (D.C. Cir. 2016) ............................................................................................ 10

*Wilson v. Better Mortgage Corp.*,

No. 25 Civ. 5503, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) .................................... 8, 13, 15

*Wilson v. MEDVIDI Inc.*,

No. 25-3996, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) .............................................. 11, 13

*Wright v. Target Corp.*,

2015 U.S. Dist. LEXIS 167000, 2015 WL 8751582 (D. Minn. Dec. 14, 2015)........................ 5

*Zelma v. Penn LLC*,

No. 19-8725, 2020 WL 278763 (D.N.J. Jan. 17, 2020)........................................................ 15

**Statutes**

47 U.S.C. § 227(a)(4).................................................................................... 13, 15, 16, 19

47 U.S.C. § 227(b)(1)(B) ........................................................................................ 18

47 U.S.C. § 227(c)(1)............................................................................................ 9, 13

47 U.S.C. § 227(c)(1)(A) ........................................................................................... 9

47 U.S.C. § 227(c)(1)(E) ............................................................................................ 9

47 U.S.C. § 227(c)(5).................................................................................. 1, 14, 15, 18

47 U.S.C. § 227(c)(5)(C) .......................................................................................... 18

47 U.S.C. § 227(e)(8)(C)(iii) ................................................................................... 15

## Regulations

47 C.F.R. § 64.1200(c)(2) ...................................................................................... 1, 19

47 C.F.R. § 64.1200(d) .......................................................................................... 1, 19

47 C.F.R. § 64.1200(e)............................................................................................. 18

47 C.F.R. § 64.1200(f)(5) ....................................................................................... 2, 19

47 C.F.R. § 64.1200(f)(5)(i)..................................................................................... 2, 19

## Rules

Fed. R. Civ. P. 8.................................................................................................... 2, 22

Fed. R. Civ. P. 8(a)(2)............................................................................................... 2

Fed. R. Civ. P. 12(b)(6)............................................................................................ 21

## Other Authorities

Rules & Regulations Implementing the TCPA of 1991, 30 FCC Rcd. 7961 ¶¶ 63-64 (2015)....... 2

In re Rules & Regs. Implementing the TCPA, 38 FCC Rcd. 12256–57 ¶¶ 26–27 & n.59........... 10

18 FCC Rcd. 14115 ¶ 165........................................................................................ 10

30 FCC Rcd. 8020 ¶¶ 115–16 (July 10, 2015)................................................................ 10

Hernandez, 2018 WL 6830220 (Dec. 21, 2018) ............................................................................. 10

Random House Webster's College Dictionary (1991) ..................................................................... 7

Oxford English Dictionary (2d ed. 1989) ................................................................................. 7, 16

Webster's Third New International Dictionary (1981 ed.) .............................................................. 7

## I.  INTRODUCTION

Defendant Line 5, LLC moves to dismiss Plaintiff's First Amended Class Action Complaint on five theories: (1) that Plaintiff's signed Security Agreement gave prior express consent to the calls and text messages at issue, and that he could not withdraw that consent until he cancelled the agreement; (2) that 47 U.S.C. § 227(c)(5) provides no private right of action for text messages; (3) that an established business relationship exempts Line 5's communications from Section 227(c); (4) that the communications were not "telephone solicitations"; and (5) that the Amended Complaint fails to distinguish between Plaintiff's two counts or to plead the elements of either. None of these arguments support dismissal.

First, consent under the TCPA is revocable, and the Third Circuit rejected Line 5's contract-based argument in *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 273-74 (3d Cir. 2013). Plaintiff revoked five times, including three times by replying "STOP" to the opt-out instruction in Line 5's own text messages, each of which Line 5 confirmed in writing. Line 5's contrary rule comes from two out-of-circuit decisions that this Court already declined to follow in *Allen v. First National Bank of Omaha*, No. 3:18-CV-1216 (M.D. Pa. June 28, 2021).

Second, Count II rests on three prerecorded voice calls placed after Plaintiff asked Line 5 to stop, which alone satisfy Section 227(c)(5)'s requirement of "more than one telephone call within any 12-month period," and in any event every district court in this Circuit to decide the question has held that a text message is a call under Section 227(c), including four decisions Line 5 attached to its own motion.

Third, the established business relationship exception applies to "telephone solicitations" under the national registry rule, 47 C.F.R. § 64.1200(c)(2), while Count II is brought under 47 C.F.R. § 64.1200(d), which governs calls made for telemarketing purposes and contains no such

1

exception; a seller-specific do-not-call request terminates any such relationship in any event. *Id.* § 64.1200(f)(5)(i).

Fourth, whether a communication was made for a marketing purpose is a question of fact that courts in this Circuit do not resolve at the pleading stage, and Line 5's argument rests entirely on a single text message it sent *before* any communication on which Plaintiff's claims rest.

Fifth, Fed. R. Civ. P. 8 requires a short and plain statement of the claim, not a communication-by-communication map, and this Court applied both subsections of the TCPA to a single set of factual allegations in *Fridline v. Millennia Tax Relief, LLC*, 727 F. Supp. 3d 517 (M.D. Pa. 2024).

The Motion should be denied in its entirety.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). At the pleading stage, however, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to give a defendant fair notice of the claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2

### III.  ARGUMENT

**A.  Abramson Revoked His Consent, and Third Circuit Law Permits him to do so.**

Consent under the TCPA is revocable. Abramson revoked his five times, including three times through the opt-out mechanism Line 5 built into its own text messages and confirmed on each occasion. Line 5 argues that his consent was a term of the Security Agreement and could not be unilaterally withdrawn. For that rule it offers two decisions from outside this Circuit and asks the Court to depart from Third Circuit precedent and from its own prior decision rejecting the same argument.

### 1.  *Consent under the TCPA is revocable.*

In *Gager v. Dell Financial Services, LLC*, the Third Circuit held that "the TCPA allows consumers to revoke their prior express consent." 727 F.3d 265, 270 (3d Cir. 2013). Line 5 reads *Gager* as addressing only consent given gratuitously and as leaving open whether consent written into a signed agreement can be withdrawn. (Def. Br. at 9.) However, they are wrong as *Gager* reached that question. The defendant there argued that its contract with the plaintiff exempted it from the revocation rule. The Court rejected the argument, holding that "the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement," and that "the fact that Gager entered into a contractual relationship with Dell did not exempt Dell from the TCPA's requirements." *Id.* at 273-74.

### 2.  *Abramson revoked his consent, using the method Line 5 gave him.*

A consumer may revoke consent "in any manner that clearly expresses a desire not to receive further messages," by "any reasonable method." *Rules & Regulations Implementing the*

3

*TCPA of 1991*, 30 FCC Rcd. 7961, ¶¶ 63-64 (2015); *ACA Int'l v. FCC*, 885 F.3d 687, 692 (D.C. Cir. 2018).

Line 5's text messages told Abramson how to opt out: "Reply STOP to unsubscribe." (ECF 42, ¶ 19.) He replied STOP on three occasions, and Line 5 sent back a confirmation each time. (*Id.* ¶¶ 21, 24-25.) He also telephoned Line 5 at 844-775-4635 and asked that the calls stop, and he mailed Line 5 a letter asking to be placed on its internal do-not-call list. (*Id.* ¶¶ 21, 23.) A consumer who uses the method the caller designed, and who receives the caller's confirmation that the request was received, has revoked by a reasonable method.

Line 5 accepts that the letter revoked Abramson's consent but says the STOP replies did not. (Def. Br. at 11.) It does not explain the difference. Its position also depends on treating the October 24 letter as a cancellation of the contract. The Amended Complaint describes that letter as a request that Line 5 stop calling and add Abramson to its internal do-not-call list, and pleads cancellation as a separate, later act. (ECF 42, ¶¶ 23, 27.) At this stage the Court takes the pleading as written. *Ordonez v. Yost*, 289 F. App'x 553, 554 (3d Cir. 2008).

### 3. *Line 5 asks the Court to follow two out-of-circuit decisions it has already declined to follow.*

Line 5's rule comes from *Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51 (2d Cir. 2017), and *Medley v. Dish Network, LLC*, 958 F.3d 1063 (11th Cir. 2020). Neither binds this Court, and this Court has already considered and rejected them. In *Allen v. First National Bank of Omaha*, No. 3:18-CV-1216 (M.D. Pa. June 28, 2021), the defendant made the same argument on the same authority. This Court stated that "the Third Circuit explicitly rejected this contract law-based argument in *Gager*." The Court held that "consistent with controlling Third Circuit precedent, the Court declines to adopt the approach to unilateral revocation of consent taken by

4

*Reyes*." The Western District of Pennsylvania and the District of Delaware have done the same.

First, the Court in *McBride v. Ally Fin., Inc.*, No. 15-867, 2017 WL 3873615, at *2 (W.D. Pa. Sept.

5, 2017) held:

> [T]he Court is not entirely persuaded by Defendant's (and the <u>Reyes</u>'s Court's)
> efforts to distinguish the binding, Third Circuit precedent in <u>Gager v. Dell Financial</u>
> <u>Services</u>. *Id.*, 727 F.3d 265 (3d Cir. 2013). <u>Gager</u> is one of the strongest statements,
> in terms of interpreting revocation-of-consent consistently with the remedial
> purposes of the TCPA; and the Court cannot lightly cast-aside language
> in <u>Gager</u> supporting a contrary conclusion. *Compare* <u>Reyes</u> at 56-59 (finding that
> consent-to-be-called was an "essential," "bargained-for [term of] consideration in a
> bilateral contract" that could not be unilaterally revoked) *with* <u>Gager</u> at 273-74
> (holding that a debatably-similar consent provision "plainly [was] not an essential
> term," and that, "[m]ore importantly, [the company's] argument that its contractual
> relationship with [the customer] somehow waive[d] her rights under the TCPA is
> incorrect") (emphasis added); *see also, e.g.*, <u>Wright v. Target Corp.</u>, 2015 U.S. Dist.
> LEXIS 167000, 2015 WL 8751582, *7 (D. Minn. Dec. 14, 2015) (rejecting
> "bilateral-contract" argument, later endorsed in [*5] <u>Reyes</u>, in reliance on <u>Gager</u>).

*McBride v. Ally Fin., Inc.,* 2017 U.S. Dist. LEXIS 142804, *4-5 (2017). Similarly, the Court in

*Franklin v. Navient Corp.*, No. 17-1640-RGA, 2019 WL 4222681, at *5 (D. Del. Sept. 5, 2019)

held:

> Whatever the merits of *Reyes*, Third Circuit precedent is to the contrary. In *Gager
> v. Dell Fin. Services, LLC*, 727 F.3d 265, 268 (3d Cir. 2013), the Court of Appeals
> held that, based upon common law principles, the TCPA affords a consumer the
> right to revoke his prior express consent to be contacted on his cellular phone via
> an autodialing system and there is **no** temporal limitation on that right. *See
> also Daubert v. NRA Group, LLC*, 861 F.3d 382, 390 (3d Cir. 2017) ("we reaffirm
> that Congress `did not intend to depart from the common law understanding of
> consent.'). The *Gager* court explained that under the common law understanding of
> consent, the basic premise of consent is that it is "given voluntarily" and under
> common law consent may be withdrawn. *Gager*, 727 F.3d at 270-71. In addition,
> the *Gager* court rejected the creditor's position that "a creditor will want to know in
> advance whether a credit applicant will consent to automated phone calls and that
> this knowledge is part of the `consideration' that the applicant offers in support of
> her application." *Id.* at 273. The Third Circuit explained, "Although [the creditor]
> is correct that the level of contact that a debtor will consent to may be relevant to
> the negotiation of a line of credit, the ability to use an autodialing system to contact
> a debtor is plainly not an essential term to a credit agreement." *Id.* at 273-74. The
> Third Circuit explicitly rejected the contract law argument that the Second Circuit

5

accepted in *Reyes*. *Id.* Hence, under Third Circuit precedent, Plaintiff may unilaterally withdraw or revoke his express consent under the TCPA.

*Franklin v. Navient Corp.,* 2019 U.S. Dist. LEXIS 150902, *15-16 (2019). Line 5 cites none of these decisions and attempts to create the impression that this Court is writing on a blank slate. It is not. Although the Second and Eleventh Circuits adopted a contract-based limitation on revocation in *Reyes* and *Medley*, courts applying controlling Third Circuit precedent have consistently concluded that *Gager* forecloses that approach. Indeed, every court within the Third Circuit to squarely consider the issue has held that *Gager* permits unilateral revocation notwithstanding a contractual consent provision.

*Reyes* would not help Line 5 in any event. *Reyes* left gratuitous consent revocable and held only that consent amounting to "bargained-for consideration in a bilateral contract" cannot be withdrawn. 861 F.3d at 56-57. The clause Line 5 quotes is the first kind: "By providing us your wireless (cell) telephone number, you expressly consent to receiving telephone calls from us . . . ." (Def. Br. at 3.) The consent attaches when the consumer supplies a number, which is what the consumer did in *Gager*. Line 5 does not argue that Abramson's cell number was consideration for the financing, or that it would have declined the transaction without it.

In summary, Third Circuit law permitted Abramson to revoke his consent, and he revoked it five times before the calls and texts at issue. Line 5 offers no reason for this Court to depart from *Gager* or from its own decision in *Allen*. The Court should deny the motion as to this count.

6

**B. Count II Rests on Prerecorded Voice Calls, and Text Messages Are Also "Calls."**

    *1. Text messages are calls.*

        *a. The Statutory Text and the FCC's Longstanding Interpretation Confirm That Text Messages Are "Calls."*

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See e.g. Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . . " (citation omitted)).

Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "an attempt to communicate by telephone." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) and *Webster's Third New International Dictionary* (1981 ed.)).

This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any

7

communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025).

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortgage Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007; *Sagar v. Kelly Auto. Grp., Inc.*, No. 21 Civ. 10540, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). Texting is, of course, a means of communicating with someone by telephone. So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954)).

The best reading of the statute is that the word "call" includes texts. But if there's any doubt about that, the FCC's interpretation should resolve it. That's because Congress expressly delegated authority to the FCC to "fill up the details" of the Do Not Call List rules. *Loper Bright*, 603 U.S. at 395. As a number of district courts have held post-*Loper Bright*, section 227(c) "explicitly delegates such authority." *Skopos*, 2025 WL 2029274, at *4; *see Mey* v *Liberty Home Guard, LLC*, 2026 US Dist LEXIS 739, at *15, *19 (explaining section 227(c) "expressly delegated rulemaking authority" such that even "[u]nder *Loper Bright*," the FCC's interpretation is entitled to "deferential review"). So the FCC's longstanding reasonable interpretation of the word "call" should still carry the day. *See id*.

To be sure, mere statutory ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). And district courts are not bound by

8

the Hobbs Act to adopt FCC interpretations; they can and should make their own assessment of the statute. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). Business Capital says this means no deference is permitted, so courts can now ignore the FCC's longstanding interpretation. But that's incorrect.

Sometimes "the best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id.* at 394–95. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within them. *Id.* at 395; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. Congress didn't write the Do Not Call List rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility" to best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395; *see Hulce*, 132 F.4th at 497 n.1 (noting the FCC's "delegated authority" to make Do Not Call List rules). In the telecommunications context, especially, an express delegation like this one is evidence that Congress expected technology "to evolve and therefore charged the [FCC] with the continuing

9

obligation to define it." *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016). It follows that, if the statute doesn't resolve this question, Congress expected that the FCC would.

It therefore would honor Congress's intent to "respect [that] delegation" and accept the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395, 413. Exercising its expressly delegated authority, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier" and "eliminate[s] any potential confusion in the industry." 38 FCC Rcd. at 12256–57 ¶¶ 26–27 & n.59. That conclusion aligns with the FCC's determination that cell phone numbers may be listed, and that the word "call" confers protection from unwanted text messages in other TCPA contexts. *Id.* ¶ 27. Moreover, the FCC has consistently adhered to that understanding of the word "call" for more than two decades, dating back to the earliest years of the technology, when text messaging first became common. *See* 18 FCC Rcd. at 14115 ¶ 165 (July 3, 2025); 30 FCC Rcd. at 8020 ¶¶ 115–16 (July 10, 2015); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (Dec. 21, 2018). That conclusion is "reasonable and reasonably explained," and therefore warrants deference. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025).

Indeed, when *Chevron* applied, courts often deferred to the FCC's judgment about the meaning of "call" in the TCPA. *See, e.g.*, *Satterfield*, 569 F.3d at 954 (granting the FCC *Chevron* "deference to hold that a text message is a 'call' within the TCPA"); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013) (following *Satterfield*). After *Loper Bright*, there are many cases where agencies' reasonable decisions are no longer entitled to deference, but this is not one of them. The FCC's judgment about the status of text messages under its rules is as worthy of deference now as it was then. *Skopos Fin.*, 2025 WL 2029274, at *4.

Alternatively, the FCC's interpretation should—at the very least—be accorded "great

10

weight." *Loper Bright*, 603 U.S. at 388. The FCC's position is grounded in the agency's expertise, consistent across decades, and well-reasoned. Those are the hallmarks of agency action with the "power to persuade." *Id.*; *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944). The FCC's longstanding and consistent interpretation of the word "call" is thus an "informed judgment" to which this Court can "properly resort for guidance." *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 139–40); *see Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607, at *3 (S.D. Cal. 2025); *Medvidi*, 2025 WL 2856295, at *3 (accepting the FCC's interpretation as evidence of "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage").

In short, whether viewed as the statute's best reading or as a reasonable interpretation entitled to deference or persuasive weight, the FCC's conclusion that text messages are "calls" confirms that Plaintiff's claims fall squarely within § 227(c).

> **b.** ***The Third Circuit Court of Appeals and the other Federal Courts in Pennsylvania and elsewhere in the Third Circuit that have considered this question, including multiple courts in the last few months, got it right.***

Consistent with the statute's text and structure, courts—particularly within the Third Circuit—have uniformly held that text messages qualify as calls under the TCPA. Defendant's position would undermine that system if text messages were excluded from § 227(c)'s protections, telemarketers could simply bypass the Registry by shifting from voice calls to texts. Luckily for consumers, the federal courts in this Circuit have gotten the analysis correct.

This Court has not yet decided whether a text message is a call under Section 227(c). It has, however, declined to read the provision narrowly. In *Jackson v. Direct Building Supplies, LLC*, the defendant argued that Section 227(c) reached only the residential landline subscribers Congress had in mind in 1991. The Court rejected that reading and held that the provision protects

11

consumers who use cell phones for residential purposes. No. 4:23-cv-01569, 2024 U.S. Dist. LEXIS 8811 (M.D. Pa. Jan. 17, 2024).

Every district court in this Circuit to decide the question has held that a text message is a call under Section 227(c). *Pero v. Brown-Daub Chevrolet of Nazareth*, No. 25-7016, 2026 U.S. Dist. LEXIS 134498, at *10 (E.D. Pa. June 17, 2026); *Newell v. Children's Dental Health Assocs., LLC*, No. 25-5238, 2026 U.S. Dist. LEXIS 74360, at *24 (E.D. Pa. Apr. 6, 2026); *Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 U.S. Dist. LEXIS 63254, at *5-6 (E.D. Pa. Mar. 23, 2026); *Rubin v. Staples, Inc.*, No. 2:25-45515, 2026 U.S. Dist. LEXIS 70359 (D.N.J. Mar. 31, 2026).

The Third Circuit has "held that," "[a]lthough the text of the statute refers only to 'calls,'" "under the TCPA, that term encompasses text messages." *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 118 n.3 (3d Cir. 2018) (quoting *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013)). Indeed, the Third Circuit has looked to the *Satterfield* decision for guidance. *See Gager*, 727 F.3d at 269 (noting "[t]he TCPA's prohibition on automated dialing applies to both voice calls and text messages" and citing *Satterfield*). Consistent with that directive, district courts have applied that analysis.

On March 23, 2026 an opinion by Judge Catherine Henry, denied a motion to dismiss raising materially identical arguments, including that text messages are not "calls" under the TCPA. *Cole v. C/T Install Am., LLC*, Civil Action No. 25-3531, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026) In *Cole* Judge Henry further concluded that the TCPA's structure and purpose confirm that interpretation, noting that identical statutory language in neighboring provisions has consistently been applied to text messages:

> Continuing on to examine the structure of the TCPA as a whole, I note that the Supreme Court as well as other courts have found that "calls" under § 227(b), a neighboring section of the TCPA, include text messages. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016). I also note

12

that both §§ 227(b) and 227(c) use the same term - "telephone call." (§ 227(b) prohibits the initiation of "any telephone call to any residential telephone line" using an automated telephone system and § 227(c) protects a person who "receives more than one telephone call over a 12-month period.") As with other courts who examined the structure of the TCPA, I find that it is "strongly persuasive. . . [that] a subsection of the same statute uses identical language," *Alvarez*, 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930 at *6. "The fact that the term 'call' as used in § 227(b) encompasses 'text messages,' supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid v. Newity, LLC*, No. 25-8012, 2025 U.S. Dist. LEXIS 221088, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025). As further support, § 227(c) prohibits sending "telephone solicitations" to numbers on the DNC list, and the TCPA defines "telephone solicitations" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of . . . goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). The structure of the entire TCPA leads to the conclusion that § 227(c) does include text messages.

In examining the purpose of the TCPA, I again find that it leads to the conclusion that "call" as used in § 227(c) includes text messages. "The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. June 19, 2009). Given Congress's expressly stated goal "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), "it strains belief to suggest that Congress silently determined that [ ] oral messages were more invasive or objectionable than written ones." *Wilson v. MEDVIDI Inc.*, No. 25-3996, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025). Congress intended the TCPA to protect the privacy of consumers from unsolicited marketing efforts, and a text message can be just as invasive as a phone call.

Lastly, I find that interpreting § 227(c) to include text messages is consistent with both the previously discussed guidance from the FCC, as well as numerous decisions from other courts on this same issue. *See Mujahid*, 2025 U.S. Dist. LEXIS 221088, 2025 WL 3140725, at *2; *Alvarez*, 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930, at *4; *Wilson v. MEDVIDI Inc.*, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3. *Wilson v. Better Mortg. Corp.*, No. 25-5503, 2025 U.S. Dist. LEXIS 251694, 2025 WL 3493815 (S.D.N.Y Dec. 5, 2025); *Mey v. Liberty Home Guard, LLC*, No. 23-281, 2026 U.S. Dist. LEXIS 739, 2026 WL 486556 (N.D. WV, Jan. 5, 2026). *But see Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp.3d 894, 899 (C.D. Ill. July 21, 2025) (finding that Section 227(c) does not apply to text messages based on a plain reading of the TCPA and its implementing regulations); *Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270, 1273 (N.D. Fla. Aug. 26, 2025) (finding that the text of § 227(c) was clear and a text message was not a telephone call.); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-847,

13

2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (finding that Section 227(c) does not apply because "a text message is not a telephone call"); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 25-5093, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at *1 (C.D. Cal. Dec. 3, 2025) (stating that the Court "reads the ordinary meaning of 'telephone call' to exclude 'text message,'" and finding that Section 227(c) does not apply); [*6] *Radvansky et al. v. 1-800-Flowers.com, Inc.*, No. 25-2811, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) (stating that the "statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages."). I recognize that some courts have analyzed this issue and come to a different conclusion, but my interpretation is consistent with the weight of authority. Accordingly, I find that nothing in the text, structure or purpose of the TCPA suggests the barring of text messages under § 227(c) as proposed by Defendant, and I conclude that § 227(c) includes text messages within its definition of a "telephone call."

*Id.* at *1-6.

The result in *Cole* is consistent with another recent decision from the Eastern District of Pennsylvania in which the court denied a motion to dismiss raising the same contention that text messages fall outside the TCPA's protections. *See Newell v. RxLink Inc.*, Civil Action No. 2:25-cv-4270, ECF No. 43 (E.D. Pa. Mar. 12, 2026). In both cases, after considering full briefing, the court rejected the argument outright and allowed the claims to proceed.

Courts in New Jersey have reached the same conclusion. On March 31, 2026, the United States District Court for the District of New Jersey addressed similar arguments in *Rubin v. Staples, Inc.*, Civ. No. 2:25-45515, 2026 U.S. Dist. LEXIS 70359 (D.N.J. Mar. 31, 2026). While the court ultimately dismissed certain claims on other grounds, Judge Martini expressly recognized that text messages constitute "calls" under the TCPA. The Court explained that both Supreme Court and Third Circuit precedent treat text messages as calls, and further held that the term "telephone call" in § 227(c) encompasses text messages based on the statute's text, structure, and purpose:

The TCPA is meant to "protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object," 47 U.S.C. §

14

227(c)(1) (emphasis added). The phrase "telephone solicitation," includes "the initiation of a telephone call or *message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). Staples argues that § 227(c)(5)'s right of action protects recipients of at least two "telephone calls," *not* "telephone solicitations" and also maintains that because Congress defined a "text message" to exclude a "real time, two-way voice communication," *see* § 227(e)(8)(C)(iii), it recognized text messages as a distinct mode of communication that Congress did not include as "calls" in § 227(c).

Subsection (e)(8)'s definitions are, however, expressly for purposes of subsection (e), which addresses prohibitions on misleading or inaccurate caller identification information. In contrast, the definition of "telephone solicitations" applies to the entire section rather than just subsection (a). Staples fails to show that Congress's definition applicable only to subsection (e) undermines Congress's express intent to protect residential telephone subscribers from unwanted "telephone solicitations," which include both calls and messages.

Further, as noted above, the term "call" has been held to include text messages in § 227(b). Unlike the distinction between "residential" as used in § 227(b) to refer to a type of line, and "residential" as used in § 227(c) to describe the type of subscriber, there is no basis to ascribe different meanings to the term "call" by interpreting the same term more narrowly in § 227(c) than in § 227(b). *See Wilson*, 2025 WL 3493815, at *7 (noting "weight of [] authority concerning § 227(b) strongly suggests that § 227(c)'s parallel usage of 'telephone call[s]' applies to text messages"); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1207 (M.D. Fla. 2022) (agreeing with "several persuasive decisions" that "telephone call" in § 227(c) includes text message because context of statutoiy text does not distinguish "telephone call" in subsection (c) from "telephone call" in subsection (b), which has been interpreted to include both voice call and text messages). The plain meaning of "telephone call" in 1991 was "a communication made by telephone" without distinction between an oral or vocal communication as the first text message was not sent until 1992. *Wilson*, WL 3493815, at *5. "[A]lthough modern parlance tends to distinguish between phone calls and text messages, the meaning of 'telephone call' in 1991—when the TCPA was enacted—was broad enough to encompass text messages." *Id.*

Notably, the majority of courts also consider § 2[2]7(c)(5)'s protection against "calls" to include text messages. *See Bradshaw v. CHW Group, Inc.*, 763 F. Supp. 3d 641 n.5 (D.N.J. 2025) ("Text messages are considered 'calls' for [§ 227(c)(5)] purposes."); *Champion v. Credit Pros Int'l Corp.*, No. 21-10814, 2025 WL 3452354 (D.N..T. May 15, 2023) (denying motion to dismiss § 227(c)(5) claim based on receipt of text messages); *Zelma v. Penn LLC*, No. 19-8725, 2020 WL 278763, at *6-7 (D.N.J. Jan. 17, 2020) (assuming that sending text messages to number on DNC registry was claim under § 227(c)(5)).

*Id.* at \*14-17. The most recent decision, *Pero*, confirms that conclusion under the traditional tools of statutory interpretation required by *Loper Bright* and *McLaughlin*. The court began with the ordinary meaning of the statutory language at the time of enactment and observed that § 227(a)(4) defines a "telephone solicitation" to include the initiation of a "telephone call or message." 2026 WL 1747214, at \*2. Using the 1989 Oxford English Dictionary, the court explained that a "call" meant a "summons or communication by telephone" and a "message" included an oral or written communication transmitted from one person to another. *Id.* Because a text message is a written communication transmitted by telephone, it falls within the statute's language and purpose. *Id.*

*Pero* also rejected the argument that *Loper Bright* and *McLaughlin* permit courts to disregard the FCC's interpretation. Although the FCC's construction is no longer automatically controlling, Congress expressly directed the FCC to prescribe regulations protecting telephone subscribers from unwanted solicitations. *Id.* at \*2–3. The court therefore accorded the FCC's interpretation "considerable weight" and relied on the FCC's determination that the Registry's protections extend to text messages, deter illegal texts, and make enforcement easier. *Id.* at \*3. It further reasoned that §§ 227(b) and 227(c) use the same language, which should presumptively carry the same meaning in both provisions. *Id.* at \*4. After considering the statutory text, the FCC's regulations, and the overwhelming weight of authority, the court held that "a text message is a telephone call for purposes of [47 U.S.C.] § 227(c)." *Id.* at \*5.

Taken together, these recent decisions from courts within this Circuit confirm that Defendant's position is not only unsupported, but has been repeatedly rejected. Courts in Pennsylvania have denied motions to dismiss presenting these same arguments, and courts in

New Jersey have likewise recognized that text messages fall squarely within the TCPA's protections. This Court should do the same.

The Third Circuit and district courts within it have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as voice solicitations. Excluding texts from the Registry would nullify Congress's protections, allow telemarketers to exploit the dominant form of communication today, and erode consumer trust. Because the statutory text, the FCC's consistent interpretation, and binding precedent all confirm that texts fall within the TCPA's scope, Defendant's attempt to carve out an exception must be rejected.

### c.  *Steidinger does not bind this Court and should not persuade it.*

Line 5 relies on *Steidinger v. Blackstone Medical Services*, No. 25-2398, 2026 U.S. App. LEXIS 20613 (7th Cir. July 14, 2026), a Seventh Circuit decision that does not bind this Court. Its reasoning also does not hold up.

*Steidinger* rests primarily on the 1991 dictionary definition of "call": "to get or try to get into communication by telephone." *Id.* at *5. That definition is functional. It asks whether one person tried to reach another by telephone. It does not ask whether the communication carried sound, and text messaging fits within it. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026) ("Text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'"). The panel reached a different result by turning to a separate definition of the noun "telephone", an instrument for conveying sound, and assuming that any communication made by telephone must itself make sound. But "telephone" identifies the instrument used. It does not narrow what a "call" is. A text message is sent by telephone, to a telephone number, over telephone service, in an attempt to reach the subscriber.

17

The panel also accepts that a text message is a call under Section 227(b) while denying that it is a call under Section 227(c). *Steidinger*, 2026 U.S. App. LEXIS 20613, at *13. It reaches that result by reading the phrase "telephone call or message" in Section 227(a)(4) to mean that a message cannot also be a call. The statute does not support that division. Section 227(b)(1)(B) regulates a "telephone call" made "to deliver a message." 47 U.S.C. § 227(b)(1)(B). Congress used "call" for the act of reaching someone by telephone and "message" for what the call carries.

Line 5 presses the same structural point: that Sections 227(c)(1) through (c)(4) speak of "telephone solicitations" while Section 227(c)(5) speaks of "telephone calls," so the private remedy must be narrower. Section 227(c)(5) itself answers that. The same paragraph gives a defendant an affirmative defense for reasonable practices designed to avoid "telephone solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5)(C). Congress used the defined term "telephone solicitation" inside the very paragraph Line 5 says is confined to voice calls.

The regulations that Section 227(c)(5) enforces also cover text messages. Liability attaches to communications made "in violation of the regulations prescribed under this subsection," and those regulations apply to "telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e). *Steidinger* set that regulation aside because the FCC issued it under subsection (c)'s general rulemaking authority rather than under Section 227(c)(5). *Steidinger*, 2026 U.S. App. LEXIS 20613, at *11. But Section 227(c)(5) grants no rulemaking authority. It enforces the rules issued under the paragraphs before it.

Line 5 offers one out-of-circuit decision and asks this Court to become the first court in this Circuit to hold that consumers have no private remedy under the do-not-call rules for unwanted marketing texts. The Court should decline.

18

### C. The Established Business Relationship Exception Does Not Apply to Count II.

Line 5's established business relationship argument is directed at a rule Abramson did not sue under.

Section 227(c)(5) does not prohibit anything on its own. It gives a private right of action to a person who receives more than one telephone call "in violation of the regulations prescribed under this subsection." The prohibition comes from whichever regulation the plaintiff invokes. Count II invokes 47 C.F.R. § 64.1200(d), the internal do-not-call rule. (ECF 42 at 9.) Abramson alleges that Line 5 did not honor his do-not-call requests. He does not allege that Line 5 called a number on the national registry.

The established business relationship exception applies to "telephone solicitations." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(5) (defining the term "for purposes of telephone solicitations"). "Telephone solicitation" is the operative term in the national registry rule, 47 C.F.R. § 64.1200(c)(2). Section 64.1200(d) uses a different term. It applies to calls made "for telemarketing purposes," and that term has no established business relationship exception. Line 5 has briefed a defense to a claim Abramson did not bring.

The defense would fail anyway. Line 5 quotes the requirement that the relationship "not [have] been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5). The next subsection provides that a subscriber's seller-specific do-not-call request terminates the relationship "even if the subscriber continues to do business with the seller." *Id.* § 64.1200(f)(5)(i). Abramson made that request five times. (ECF 42, ¶¶ 21, 23-25.) Every communication Line 5 defends came after at least one of them.

**D. Whether the Communications Were Marketing Is a Question of Fact and the Plaintiff has Pled that they Are.**

Line 5 says its calls and texts were account servicing rather than solicitation. That is a fact question, and courts in this Circuit do not resolve it on a motion to dismiss. In the Eastern District of Pennsylvania Judge Murphy declined to do so in *Newell v. Child.'s Dental Health Assocs., LLC*, one of the cases Line 5 attached, noting that at this stage a plaintiff "need only plead factual allegations that raise a right to relief above the speculative level," and that "[w]ith some preliminary discovery, the true purpose and intended recipient of the text messages will be better evaluated." *Newell*, 2026 U.S. Dist. LEXIS 74360, at *8 n.2, *14.

The First Amended Complaint also plausibly alleges that the challenged communications were telemarketing. Plaintiff alleges that, before dealing with Line 5, he received "various telemarketing calls regarding an extended vehicle service warranty." (ECF No. 42 ¶ 17.) He then financed an extended vehicle service warranty through Line 5 and thereafter continued to receive calls and texts from Line 5. (Id. ¶¶ 18-19.) More importantly, the communications challenged in this case all occurred after Plaintiff repeatedly told Line 5 to stop contacting him. Plaintiff alleges that he responded "STOP," telephoned Line 5 requesting that the calls stop, received confirmation that his STOP request had been honored, sent a written letter demanding that the calls cease and requesting placement on Line 5's internal Do Not Call list, responded STOP to additional text messages, and nevertheless continued to receive the challenged prerecorded calls and texts. (Id. ¶¶ 21-26.) Accepting those allegations as true—as the Court must—Plaintiff has plausibly alleged that Line 5 continued sending prohibited telephone solicitations despite repeated revocations of consent and repeated requests to stop.

20

Line 5's argument also rests on the wrong message. The only communication it quotes is the October 16 text. (Def. Br. at 18.) Line 5 sent that text the day Abramson signed, before he asked Line 5 to stop and before any message was sent which his claims rest on. The communications at issue are the prerecorded calls of October 25, 28, and 30 and the texts of October 26 and 30. (ECF 42, ¶¶ 21-22, 24-26.) The amended complaint describes one such communication: a prerecorded voice asking Abramson to call Line 5 back. (*Id.* ¶ 22.)  The Complaint further alleges that the October 28 and October 30 prerecorded calls were "identical" to the October 25 prerecorded message. (*Id.* ¶¶ 25-26.) Line 5 does not tell the Court what the others said. It asks the Court to assume they matched the first. At this stage, inferences run the other way. *Ordonez*, 289 F. App'x at 554.

Nor does the mere existence of a financing relationship transform every later communication into account servicing as a matter of law. Whether a communication constitutes a "telephone solicitation" depends on its content, purpose, and context, all of which are factual questions. Discovery may reveal that the later prerecorded calls and texts sought to sell additional products, market related services, induce further business, or otherwise encourage future commercial transactions. Because Line 5 has not placed those communications before the Court, and because the Complaint plausibly alleges they were unlawful telephone solicitations sent after repeated STOP requests and requests for placement on the internal Do Not Call list, dismissal would require the Court to draw inferences in Defendant's favor rather than Plaintiff's. Rule 12(b)(6) does not permit that.

### E.  The Amended Complaint Satisfies Rule 8.

Line 5 says the Amended Complaint should be dismissed because it does not match each communication to a subsection. No rule requires that, and Line 5 cites no case that does.

21

This Court has applied both subsections to a single set of allegations. In *Fridline v. Millennia Tax Relief, LLC*, this Court reviewed one list of calls, found three violations of Section 227(b) and seven violations of Section 227(c) among the same communications, and held that "Plaintiff is entitled to recover for multiple violations from a single call under the present circumstances." 727 F. Supp. 3d 517, 525 (M.D. Pa. 2024). A single call can violate both subsections. A plaintiff therefore cannot assign each communication to one subsection or the other, and Fed. R. Civ. P. 8 does not ask him to.

Line 5's description of the pleading is also inaccurate. It says the Amended Complaint does not identify "which communications were allegedly made using an artificial or prerecorded voice." (Def. Br. at 19.) Paragraphs 22, 25, and 26 identify those calls by date. Paragraph 28 gives five reasons for alleging that they were prerecorded. The complaint also keeps the counts separate. Count I arises under Section 227(b) on behalf of the Robocall Class. Count II arises under Section 227(c)(5) and Section 64.1200(d) on behalf of the Internal Do Not Call Class. Each has its own class definition, theory of liability, and damages allegations. (ECF 42, ¶¶ 31, 47-55.)

Line 5's brief shows that it understands the claims. It identified both counts, briefed a consent defense to Count I and three defenses to Count II, quoted the text message, listed the dates, and attached exhibits responding to specific allegations. Line 5 answered the original complaint rather than moving against it. (ECF 7.)

## IV. CONCLUSION

For the reasons above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety

22

Plaintiff,
By Counsel, this 30 day of July, 2026,

*By: /s/ Jeremy Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
E.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony I. Paronich*
Anthony I. Paronich, Pro Hac Vice
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Counsel for Plaintiff*

23