**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEWART ABRAMSON,**<br>**individually and on behalf of a class**<br>**of all persons and entities similarly**<br>**situated,** | : <br> : <br> : <br> : <br> : | **Case No. 1:26-cv-00155-JKM** |
| **Plaintiff(s),** | : <br> : | |
| **v.** | : <br> : | |
| **LINE 5, LLC,** | : <br> : | |
| **Defendant(s).** | : <br> : | |

**DEFENDANT LINE 5, LLC'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6)**

Defendant Line 5, LLC ("Line 5") respectfully submits this reply brief in

support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint

Pursuant to FED. R. CIV. P. 12(b)(6).

**I.     Plaintiff Cannot Amend the Amended Complaint Through His
        Opposition to Transform Line 5's Account-Related Communications into
        Telemarketing.**

Plaintiff's Opposition cannot transform the case he pleads in his Amended

Complaint into the case he now needs to survive dismissal.  While Line 5 stands by

its argument that "text messages" cannot be calls for purposes of 47 U.S.C. § 227(c)

1

and 47 C.F.R. § 64.1200(d), even if the Court finds that text messages are within the purview of those sections, Count II of Plaintiff's Amended Complaint is still subject to dismissal for failure to state a claim.

It is well-settled in the Third Circuit that ". . . the legal theories set forth in [the] brief are helpful only to the extent that they find support in the allegations set forth in the complaint." *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). "'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Id.*, *quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1984). In other words, Plaintiff cannot supply, through his Opposition, the factual allegations necessary to state a claim that are absent from the Amended Complaint.

This principle is particularly here because Plaintiff's Opposition attempts to recast Line 5's post-purchase account communications as "telemarketing" communications in an attempt to salvage Count II. Count II invokes 47 U.S.C. § 227(c)(5) and the entity-specific do-not-call requirements of 47 C.F.R. § 64.1200(d). AC ¶¶ 52-55. However, 47 C.F.R. § 64.1200(d) applies to only to calls made **"for telemarketing purposes",** 47 C.F.R. § 64.1200(d), which Plaintiff's Amended Complaint already confirms was not the purpose of Line 5's calls. ECF 42, ¶¶ 18-19.

2

## II.    The Amended Complaint Distinguishes the Pre-Purchase Telemarketing Calls from Line 5's Post-Purchase Account Communications.

The chronology pled by Plaintiff in his Amended Complaint is dispositive and draws a clear chronological and factual distinction between the telemarketing calls that preceded Plaintiff's transaction and the subsequent communications Plaintiff attributes to Line 5.  Paragraph 17 alleges that, "[a]t some point in October 2024, Plaintiff received various telemarketing calls regarding an extended vehicle service warranty."  ECF 42, ¶ 17.  Critically, Plaintiff does not allege that Line 5 made those calls.[1]  Instead, he alleges (in the very next paragraph) that he "agreed to an extended

---

[1] Nor could he as he pled in his original complaint in this case, ECF 1, and in another case that the calls were made either by Headstart Warranty Group or AIM.  *See Friel & Abramson, et al. v. Headstart Warranty Group, LLC, and AIM AI LLC d/b/a Safeguard My Car, LLC*, No. 24-cv-1866 (M.D. Pa.), ECF 62, ¶ 5 (". . .Stewart Abramson . . . bring this action under the TCPA alleging that AIM AI LLC d/b/a Safeguard My Car, LLC sent pre-recorded telemarketing calls on behalf of Defendant Headstart promoting their goods and services. . ."); ¶ 21 ("Defendant HeadStart outsources both the lead generation, intake, and customer service and financing sides of its business.  Specifically, Headstart uses Defendant AIM AI LLC d/b/a Safeguard My Car, LLC to place the illegal calls at issue, which HeadStart pays for.  Then, representatives of JEA and other third party customer service companies sell HeadStart's warranty products on the illegal calls.  Finally, ***all the after-sales service***, financing, customer management, and payment processing are all handled by former Defendant Line 5.") (emphasis added); ¶ 22 ("To generate business for its vehicle contracts, Defendant AIM AI LLC d/b/a Safeguard My Car, LLC physically placed the illegal calls at issue at the direction of Defendant Headstart."); ¶ 23 ("To generate business for this joint enterprise, AIM AI LLC

3

vehicle service warranty with a third party" on October 16, 2024, and that "the warranty was financed by Line 5 with whom Plaintiff signed a security agreement." *Id.* , ¶ 18.

As pleaded, Line 5's appearance in Plaintiff's chronology only comes after he purchased the extended vehicle service warranty as a result of a telephone solicitation from a third-party. *See also* footnote 1, *supra*. The first communication Plaintiff attributes to Line 5 confirms the account-related nature of the parties' communications: "Congratulations! Click here to add your payment method to your new Line 5 Account." ECF 42, ¶ 19. This text is not alleged to be an advertisement, sales pitch, or attempt to induce another purchase. On its face, the pleaded communication concerns the establishment and servicing of Plaintiff's newly created Line 5 account.

This distinction is important because Plaintiff knows the difference between alleging that communications are "telemarketing" when that was his theory. *See, e.g.,* ECF 1; footnote 1. Yet when pleading the communications he received from Line 5, that characterization disappears. ECF 42, ¶¶ 19-26. Plaintiff cannot use his Opposition to erase the distinction drawn by his own pleading and replace it with new

---

d/b/a Safeguard My Car, LLC placed illegal telemarketing calls, some pre-recorded, on HeadStart's behalf and at HeadStart's direction.").

allegations that Line 5's post-purchase account communications with him (to which he consented) were telemarketing. *Zimmerman*, 836 F.2d at 181.

### III.   Nothing in the Amended Complaint Alleges that Line 5's Prerecorded Calls Promoted or Attempted to Sell Any Product or Service.

The allegations concerning the Line 5 calls are even  more telling because Plaintiff does not allege that any prerecorded call or text attempted to sell him anything (unlike is allegations in his original complaint, or the First Amended Complaint in the *Friel* matter).  Plaintiff alleges that the October 25th prerecorded call identified Line 5 and "asked the Plaintiff to call back" at Line 5's telephone number.  ECF 42, ¶ 22.  He then alleges that the October 28th prerecorded call was "identical" to the October 25th call and that the October 30th prerecorded call was "yet another identical prerecorded call." ECF 42, ¶¶25-26.  Plaintiff describes at some length why he believes the calls used prerecorded voices, ECF 42, ¶ 28, but nowhere does he allege that any of those call offered a warranty, advertised a product, promoted an additional service, sought a new purchase, or otherwise attempted to induce Plaintiff to enter into another transaction.  And why would they when Plaintiff already admitted he made the purchase a little over a week earlier on October 16, 2024, and that Line 5 was merely financing that purchase.  ECF 42, ¶ 18.

Count II does not cure that factual omission.  Count II only conclusively states that Line 5 violated the TCPA by "sending calls" to persons who had "previously

request[ed] that such calls stop." ECF 42, ¶ 53. There are no allegations that those calls were made for telemarketing purposes or identify any product or service Line 5 purportedly sought to market through them. ECF 42, ¶¶ 52-55. Section § 64.1200(d), the regulation Plaintiff identifies as the basis for Count II, applies only to calls made "for telemarketing purposes." A request that prerecorded calls cease does not transform non-telemarketing communications into telemarketing.[2]

Plaintiff attempts to use his opposition to fill this pleading gap by asserting that the Amended Complaint "plausibly alleges that the challenged communications were telemarketing," notwithstanding the absence of any such allegation in the Amended Complaint. ECF 49, at 20. This pleading gap is even more revealing when Plaintiff argues that "[d]iscovery may reveal that the later prerecorded calls and texts sought to sell additional products, market related services, induce further, or otherwise encourage future commercial transactions." ECF 49, at 21. However, this information would already be in Plaintiff's possession and capable of being pled because Plaintiff himself has copies of the text messages and heard the prerecorded calls.

---

[2] Line 5 further questions whether Plaintiff's "STOP" request related to the text messages could even apply as a revocation of consent for calls.

Plaintiff's argument effectively confirms his pleading deficiency. Rule 8 requires Plaintiff to plead sufficient facts to make his entitlement to relief plausible before proceeding to discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559-60 (2007). Plaintiff cannot obtain discovery in the hope that it "may reveal" the facts necessary to establish an element of his claim. Indeed, *Twombly* rejected precisely that proposition—that a plaintiff may proceed to discovery based upon speculation that evidence supporting the claim might later emerge. 550 U.S. at 559. Plaintiff's conjecture that discovery might uncover some as-yet-unknown marketing purpose cannot, therefore, cure the absence of those factual allegations from the Amended Complaint. *Zimmerman*, 836 F.2d at 181.

Plaintiff's reliance on *Newell v. Children's Dental Health Associates, LLC*, No. 25-5238, 2026 U.S. Dist. LEXIS 74360 (E.D. Pa. Apr. 6, 2026), does not help him. *Newell* involved materially different facts. There, the plaintiff specifically alleged that he had never been a customer, had never contacted the defendant, and had never consented to communications from it. In fact, the plaintiff characterized the communications as "solicitation texts." *Newell*, 2025 U.S. Dist. LEXIS 74360 at *8. The court concluded that discovery could answer the question of whether the

messages were intended for an existing patient or instead sought to establish a new relationship.

Here, there is no comparable uncertainty concerning whether Plaintiff had an existing relationship with Line 5 because he expressly admits that he entered into a financing transaction with Line 5 immediately before the challenged communications. ECF 42, ¶¶ 18-19. Furthermore, the Security Agreement attached to Line 5's opening brief illustrate the existing business relationship and contained consent language to which Plaintiff agreed. Unlike the messages in *Newell*, which facially encouraged the recipient to book services, Plaintiff alleges that Line 5's text messages welcomed him as a customer and the telephone calls only identified Line 5 and requested a return call. ECF 42, ¶¶ 22, 25-26. Plaintiff's newfound speculation that those communications nevertheless *might* have been attempts to sell some unidentified additional product or service is not a reasonable inference from the factual allegations contained in the Amended Complaint; it is an entirely new factual theory appearing for the first time in his Opposition.

## IV.    Plaintiff's "STOP" Requests Do Not Transform Non-Telemarketing Account Maintenance Communications into Telemarketing

Plaintiff compounds his pleading problems by conflating two analytically distinct TCPA requirements:  whether Plaintiff revoked his prior express consent

with a "STOP" text and whether Line 5 communicated with him "for telemarketing purposes."

Plaintiff's purported revocation may be relevant to his claim under 47 U.S.C. § 227(b) which prohibits specified communications made using an artificial or prerecorded voice absent, *inter alia*, "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). The Third Circuit's decision in *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270-72 (3d Cir. 2013), addresses that question.

Count II, however, proceeds under a different theory relying on different statutory and regulatory sections. Section 227(c)(5) creates a private of action for violating certain regulations prescribed under 47 U.S.C. § 227(c), and Plaintiff specifically invokes Line 5's alleged failure to comply with entity-specific do-not-call requirements of 47 C.F.R. § 64.1200(d). ECF 42, ¶¶ 52-55. That regulation applies only to calls made "for telemarketing purposes." 47 C.F.R. § 64.1200(d). Therefore, whether Plaintiff requested that Line 5 stop communicating with him does not answer the threshold question—whether Line 5's communication were for telemarketing purposes.

Plaintiff's Amended Complaint provides the answer. Plaintiff alleges that he responded "STOP" to a Line 5 text message. ECF 42, ¶¶ 19, 21. He subsequently alleges that after sending that initial "STOP" text message, Line 5 called again using

a prerecorded voice and sent additional text messages.  ECF 42, ¶ 21.  While those allegations may be relevant to Plaintiff's contention that he withdrew consent to receive communications, they do not establish the underlying purpose of Line 5's communications.

The Opposition repeatedly relies on Plaintiff's "STOP" requests as though they supply the missing telemarketing element.  They do not.  A request that an account-related communication cease does not retroactively alter the purpose of the communication or transform it into telemarketing.[3]  Put differently, if Line 5 called Plaintiff concerning the financing relationship alleged in Paragraph 18, the fact that Plaintiff subsequently requested Line 5 to stop calling does not convert a financing or account-related call into a telemarketing call.  Plaintiff cannot establish the latter merely by alleging facts potentially relevant to the former.  The issues are distinct under the TCPA: revocation concerns whether Line 5 retained consent to make a particular type of communication while 47 C.F.R. § 64.1200(d) concerns whether the communication was made for a telemarketing purpose.

---

[3] In fact, it would be reasonable to infer that Line 5's communications were account-related because Plaintiff states that the first text message he received from Line 5 stated "Congratulations!  Click here to add your payment method to your new Line 5 Account."  ECF 42, ¶ 19.

This distinction also demonstrates why Plaintiff cannot rely on the allegations supporting Count I to supply the missing element of Count II; 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(d) regulate different conduct and impose different requirements. Even assuming for purposes of Count II that each of Plaintiff's "STOP" text messages constituted an effective revocation of consent, that assumption does nothing to establish that Line 5 thereafter attempted to sell Plaintiff a product or service. The Amended Complaint contains no such allegation.

At the end of the day, the facts alleged by Plaintiff are straightforward. Plaintiff alleges that he first received unidentified "telemarketing calls" concerning a vehicle from a third-party; he then purchased that warrant from a third-party; Line 5 financed the completed purchase; Line 5 thereafter communicated with Plaintiff regarding the resulting financing relationship between them. ECF 42, ¶¶ 17-21. Notably, Plaintiff did not plead that Line 5 attempted, either through text messages or prerecorded calls, to sell him another warranty, another produce, or any other service. Plaintiff's Opposition cannot supplement the allegations in his Amended Complaint and attempt to transform them into a different case by now asserting that Line 5's communications were telemarketing or speculating that discovery "may reveal" an unidentified sales purpose. Since the allegations in the Amended Complaint do not plausibly establish that Line 5 made the challenged

11

communications "for telemarketing purposes," Plaintiff fails to state a claim under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).

## V.    Conclusion

Based on the foregoing, Defendant Line 5, LLC respectfully requests that this Honorable Court grant its Motion and dismiss Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted,

**BARRON & NEWBURGER, P.C.**

By:    /s/ Brit J. Suttell
       BRIT J. SUTTELL, ESQUIRE
       PA Id. No. 204140
       1455 NW Leary Way, Suite 400
       Seattle, WA  98107
       (484) 999-4232
       britjsuttell@bn-lawyers.com
       Counsel for Defendant

Dated:  August 12, 2026

12

## CERTIFICATE OF SERVICE

I certify that on August 12, 2026, a true copy of the foregoing document was served on all counsel of record via CM/ECF.

**BARRON & NEWBURGER, P.C.**

By:  /s/ Brit J. Suttell
BRIT J. SUTTELL, ESQUIRE

Counsel for Defendant

13